Robert BEARDSLEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 1044–85.

Court of Criminal Appeals of Texas, En Banc.

Oct. 21, 1987.

Bill Roberts, Dallas, for appellant.

Henry Wade, Dist. Atty. and Donald G. Davis, Bruce Isaacks & Lana Rolf, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Judge.

Robert Beardsley was convicted by a jury of third degree felony theft pursuant to V.T.C.A., Penal Code, Section 31.03. The court assessed punishment at five years' imprisonment. He appealed his conviction to the Dallas Court of Appeals. The court found the evidence insufficient to support the conviction and reversed. *Beardsley v. State*, 696 S.W.2d 214 (Tex. App.—Dallas 1985). We disagree.

According to the evidence introduced at trial, Beardsley, with the aid of Delmus Kelley, rented a red 1984 Chevrolet from Holiday Payless Rent–A–Car in Dallas. Kelley had helped Beardsley obtain a job in Houston. On March 14, 1984, Kelley went to Holiday and made arrangements for rental of the 1984 Chevrolet for a period of one week so that Beardsley could get to Houston. The owner of Holiday Payless Rent–A–Car testified that when the car was rented, it had Texas license plates and a Texas inspection sticker. He also stated that Holiday always issues its' customers one set of original General Motors keys for the vehicle. The car was not returned on March 21, 1984, the end of the rental period, but was kept an additional two weeks. On April 4, the car was found in the Holiday lot. It was left mysteriously during the night with the original GM keys lying on the front seat. There was no evidence to indicate who returned the auto.

On April 21, 1984, the car was stolen off the Holiday lot. It was recovered on May 4, 1984 in Concordia, Missouri. At the time it was recovered, Beardsley and a companion, James Montgomery were in possession of the car. The evidence shows that Montgomery was driving the car when they stopped in Concordia to get gasoline. They attempted to pay with a Mobil card, but as the station was an Amoco dealer, the station owner refused to accept the card. Montgomery and Beardsley lacked cash to pay for the gas and offered a camera in payment, but it was also refused. The station owner became suspicious and suggested Montgomery try to sell the camera elsewhere. The station owner then called the police. Montgomery left the station on foot in an attempt to sell the camera, leaving Beardsley alone with the auto at the time the police arrived.

The officer arriving on the scene noted the car bore a Mississippi inspection sticker and Mississippi tags. He ran a check on the car's tags but found that Mississippi

had no record of the tags. The testimony indicates that Beardsley appeared nervous. When the officer requested Beardsley's identification, Beardsley said he had none. He stated he had lost his wallet at the Concordia rest area the night before and that his name was Donald David Long, giving an address in Fulton, Mississippi as his residence. The officer noticed several items of clothing in the back seat of the car, including one in a dry cleaning bag with a receipt bearing the name "Bob McCord." When questioned as to the identity of Bob McCord, Beardsley explained that was the name he used as a disc jockey. The officer then ran a check on the vehicle identification number and discovered the auto was listed as stolen from Dallas, Texas. Beardsley, who was standing nearby, heard the radio report on the vehicle. The officer testified that Beardsley's shoulders drooped and his face sagged upon hearing the report and said, "I didn't know the car was stolen. I'm just a hitchhiker." The officer then placed Beardsley under arrest. Montgomery was discovered nearby shortly thereafter, hiding between two houses, and was placed under arrest.

An inventory search of the car was made. Inside the trunk was an envelope containing the car's original Texas license plates. Also in the trunk was a suitcase in which was found a plastic identification card bearing Beardsley's name and photograph. The suitcase also contained a driver's license with the photo of a woman and the name "Rita Goldston."

A search of the person of James Montgomery revealed a gasoline charge slip in the name of Rita Goldston. The credit card used to make that charge was discovered almost two months later in a wallet found by a maintenance worker at the Concordia rest area where Beardsley stated he slept the previous night. Also in the billfold was a cleaning receipt corresponding to the one found in the back seat of the stolen car and bearing the name Bob McCord, a Holiday Payless Rent-A-Car business card, and a Holiday Inn of Longview guest card in Beardsley's name. In addition, there was also a bank deposit slip bearing the name Sandra Long and the same Fulton, Mississippi address Beardsley had told the officer was his own.

According to the testimony of Sandra Long, Beardsley had called her from Dallas in mid–March, saying he was sick and asking to stay with her. Long agreed. Beardsley arrived at Long's home in Fulton, Mississippi on March 23, 1984, accompanied by James Montgomery and the red Chevrolet. At that time, the car was still under rent from Holiday, (although overdue) and had not been reported as stolen. Montgomery left with the Chevrolet on March 25, 1984 and did not return until May 2, 1984. When Montgomery returned he was driving the Chevrolet, which had been taken off the Holiday lot on April 21. On that same day, Beardsley and Montgomery both left Long's residence in Fulton, supposedly to look for a job.

The standard by which we measure sufficiency of evidence was established in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979): "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Gonzales v. State,* 689 S.W.2d 900 (1985). The standard for such review on appeal is the same for both direct and circumstantial evidence. *Wilson v. State,* 654 S.W.2d 465 (Tex.Cr.App.1983) (opinion on rehearing); *Denby v. State,* 654 S.W.2d 457 (Tex.Cr.App.1983) (opinion on rehearing); *Freeman v. State,* 654 S.W.2d 450 (Tex.Cr.App.1983) (opinion on rehearing); *Carlsen v. State,* 654 S.W.2d 444 (Tex.Cr.App.1983).

The elements of theft of property are: (1) unlawful appropriation of the property; (2) with the intent to deprive the owner of the property. V.T.C.A., Penal Code, Section 31.01 (Vernon Supp.1985). Subsection (5)(B) defines "appropriate" as "to acquire or otherwise exercise control over property other than real property." "Appropriation" is "unlawful" if it is without the owner's effective consent, or if the property is stolen and the actor appropriates the property knowing it was stolen by another. Section 31.03(b), supra.

Thus, as the Court of Appeals correctly stated, we must decide whether a rational trier of fact could have found beyond a reasonable doubt that Beardsley: (1) acquired or exercised control over the car; (2) without the owner's effective consent; and (3) with intent to deprive the owner of the property. The jury was also charged on the law of parties, so that it could have reached its verdict by finding beyond a reasonable doubt that Montgomery committed each element of the offense and that Beardsley, "acting with the intent to promote or assist the commission of the offense, ... solicit[ed], encourage[d], directed, aid[ed], or attempt[ed] to aid" Montgomery in committing the offense. V.T.C.A., Penal Code, Section 7.02 (Vernon 1974).

At trial, Beardsley's defense was based on the alibi that he was ill and staying with Sandra Long on the date of the theft and thereafter until he left to look for work with Montgomery. But the alibi is in conflict with other evidence. According to the testimony of Long, Beardsley was at her residence from March 23 to May 2. Not only was the weight of Long's testimony impugned through numerous inconsistencies in her own testimony, but a guest card from the Holiday Inn in Longview indicates that Beardsley was registered at the hotel as late as March 24. Further, Beardsley was in possession of a credit card with which gasoline was purchased for the car on May 1, 1984, one day before Montgomery supposedly returned from Texas with the stolen car. Beardsley's statement to the arresting officer that he was "just a hitchhiker" is also in conflict with his alibi.

The Court of Appeals looked strongly to the alibi, which was rejected by the jury. The jury is the ultimate trier of fact and as such, has the duty of resolving conflicting testimony and the option of accepting or rejecting the evidence offered by the accused. Simply because the jury may have found the evidence unconvincing is not grounds for finding insufficient evidence to support the verdict. *Anderson v. State,* 701 S.W.2d 868 (Tex.Cr.App.1985).

Moreover, even if the jury accepted the alibi, and believed that Beardsley did not actually take the car from the Holiday lot, the conviction may still stand, based on the law of parties. In determining whether an individual is a party to an offense and bears criminal responsibility, the court may look to events before, during, and after the commission of the offense. Participation in an enterprise may be inferred from the circumstances and need not be shown by direct evidence. Circumstantial evidence may be sufficient to show that one is a party to an offense. *Wygal v. State,* 555 S.W.2d 465 (Tex.Cr.App.1977); *Ex Parte Prior,* 540 S.W.2d 723 (Tex.Cr.App.1976).

Beardsley was in possession of the red Chevrolet on two occasions prior to the theft. First, the car was rented by Kelley for Beardsley's use early in March for a period of three or four days, after which the car was timely returned. The second possession occurred when Kelley again rented the car for Beardsley on March 14. The rental was for one week, but it was not returned until April 4. A set of original General Motors keys were issued with the Chevrolet, but when the car was recovered it was being operated with a duplicate set of keys. Someone copied the keys that were originally issued with the car. At the time of Beardsley's arrest, the car bore a Mississippi inspection sticker and license tag. The front license plate bracket had been removed. The Mississippi license plate on the red Chevrolet belonged to Beardsley's girlfriend, Sandra Long. These facts are obviously inconsistent with what Beardsley knew; that the car was the property of Holiday Rent–A–Car and originally had Texas plates and a Texas inspection sticker. The presence of Beardsley's luggage in the trunk where the original Texas plates were found increases suspicions as to the extent of Beardsley's knowledge of the true nature of the car. At the time of the arrest, Beardsley was with the car, and had been for three days, his suitcase in the trunk and his clothing in the back seat. The wallet he stated he lost contained a credit card with which gas purchases were made for the auto. Moreover, when questioned by the officer, Beardsley

gave two false names and denied knowledge of the theft, deliberately lying when he stated "I'm just a hitchhiker."

▮ The panel opinion notes that mere presence at the scene of the crime is insufficient to prove that a person is a party to the crime, even where a false name is given. But the complete rule is that while presence of an accused at the scene of an offense is not alone sufficient to support a conviction, it is a circumstance tending to prove guilt, which, combined with other facts, may suffice to show that the accused was a participant. *Valdez v. State*, 623 S.W.2d 317 (Tex.Cr.App.1981) (opinion on rehearing). As demonstrated above, the record contains ample "other facts" to support the conviction.

The panel refers to two opinions of this Court where, it asserts, the circumstances were "more compelling" than those presented here, yet the evidence was insufficient to support conviction of the accused as a party to an offense. However, one of those cases, *Morrison v. State*, 608 S.W.2d 233 (Tex.Cr.App.1980), applied the rule we overruled in *McClain v. State*, 687 S.W.2d 350 (Tex.Cr.App.1985). That case, therefore, has no value in assessing the evidentiary sufficiency of the case at bar. The other case cited by the panel is *Wygal v. State*, supra. That case is clearly distinguishable. In *Wygal*, the defendant's only acts were picking up the alleged thief at his request after the stolen car had been dropped off, and confirming a false address given by the thief. The Court noted that there was no evidence of possession of the car by the defendant, nor was the defendant ever present in the stolen car. Further, the acts of the defendant Wygal all occurred after the offense was completed. In the case at bar, the accused had substantial contacts with the stolen car, as the evidence detailed above demonstrates. Beardsley had been in possession of the auto twice before the theft for lengthy periods of time. *Wygal* cannot be said to be more compelling than the facts of the instant case.

▮ A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every reasonable hypothesis except that of the guilt of the accused, and proof amounting to only a strong suspicion or mere probability is insufficient. But it is not necessary, however, that every fact point directly and independently to the guilt of the accused. The cumulative force of all the incriminating circumstances may be sufficient to warrant a conclusion of guilt. *Sullivan v. State*, 564 S.W.2d 698 (Tex.Cr.App.1978) (opinion on rehearing). It is not required to prove to a moral certainty that the circumstances presented actually exclude every hypothesis that the criminal act may have been committed by another person; it must only exclude every reasonable hypothesis raised by the evidence that would tend to exculpate the accused. It is enough that the conclusion of guilt is warranted by the combined and cumulative force of all the incriminating circumstances. *Brandley v. State*, 691 S.W.2d 699 (Tex.Cr.App.1985); *Vaughn v. State*, 607 S.W.2d 914 (Tex.Cr.App.1980); *Flores v. State*, 551 S.W.2d 364 (Tex.Cr.App.1977).

▮ We find the cumulative force of all the incriminating circumstances sufficient for the jury, as the trier of fact in this case, to conclude, as they did, that the accused was guilty beyond a reasonable doubt.

The decision of the Court of Appeals is reversed and the case is remanded for consideration of appellant's remaining point of error.

TEAGUE, J., finds that because the Court of Appeals has correctly decided that a rational trier would not find the evidence sufficient, and the theory used by the State was not the exclusive theory, he votes to put this Court's "improvidently granted stamp" to the State's petition for discretionary review.

ONION, P.J., not participating.

DUNCAN, Judge, concurring and dissenting.

My basic opposition to the majority's opinion is best stated as a question: why

was this Petition for Discretionary Review granted in the first place?

In its Petition for Discretionary Review the State in complying with *DeGrate v. State*, 712 S.W.2d 755 (Tex.Cr.App.1986) asserts as the Reason for Review the following: "The Court of Appeals has decided an important question of state law in conflict with the applicable decisions of the Court of Criminal Appeals." State's Petition for Discretionary Review, p. 2. For two reasons that just is not true.

First, the Court of Appeals' decision in this case is unquestionably important to the parties (State and Appellant); however, the Court of Appeals' interpretation of the facts and their relationship to the law in this one case certainly cannot be elevated to a decision concerning an "important decision of state law...." *Id.*

Second, although the State in mere conclusory form states that the Court of Appeals' decision conflicts with "applicable decisions ...," *Id.*, of this Court these conflicting decisions are not identified. Since the Petition for Discretionary Review does not identify the supposed contradictory opinions there is no way they can be contrasted with the Court of Appeals' decision. The propriety of contrasting the cases seems too implicit in the reason for review the State advances. In fact, I would hold that when such a reason for review is advanced (by either the State or a defendant) then such a discussion is absolutely necessary for there to be compliance with R. 200(c)(1), *Tex.R.App.Pro.* In other words, the mere quotation of the rule authorizing review should be deemed insufficient.

I agree with the majority's conclusion that the Court of Appeals' decision regarding the sufficiency of evidence in this case was erroneous. Therefore, since the Petition for Discretionary Review was granted I concur in its disposition. In the future, however, we should only review Court of Appeals' decisions regarding sufficiency of evidence when the party appealing the determination sufficiently pleads and proves that the Court of Appeals in its reasoning "so far departed from the accepted and usual course of judicial proceedings, ..." Rule 200(c)(6), *Tex.R.App.Pro.*, as to necessitate this Court's "power of supervision." *Id.*

This Court has neither the legal authority (with a few well-known exceptions), resources, staff, budget, or hopefully the inclination to conduct itself as a direct review court and thereby attempt to rectify all of the inequities that may befall the players that take roles in the Texas criminal justice system. We should only *review* those Court of Appeals' decisions that erroneously impact the criminal law of this state. Trying to correct and cure every illness in the system is doomed to fail. By limiting our review to those cases that affect not just the parties but the system will result in both better quality opinions but more importantly, continuity.

CAMPBELL, J., joins this opinion.

CLINTON, Judge, dissenting.

When a panel of three judges of the Dallas Court of Appeals, or any other court of appeals for that matter, unanimously finds circumstantial evidence is insufficient to support a judgment of conviction, my position as member of this discretionary review court is that such finding is entitled to a respectable measure of deference. For that there is supportive constitutional rationale in Article V, § 6. Compare, e.g., *Hall v. Villareal Development Corp.*, 522 S.W.2d 195 (Tex.1975).

There are also sound policy considerations. Without a full discourse on that subject, suffice to point out that review functions of this Court are different from appellate functions of courts of appeals.

A direct appeal court primarily examines asserted error in trial court and its impact on rights of accused; secondarily, it undertakes to find the law when there is none on point, interpreting statutes, applying constitutional principles and developing the common law, if need be. Judge Shirley M. Hufstedler calls the first a "corrective function" and the second "institutional functions." Hufstedler, *New Blocks for Old Pyramids: Reshaping the Judicial System*, 44 S.Cal.L.Rev. 901, 910–911 (1971).

"With each rise in the appellate structure, the importance of the review for correctness function diminishes and the importance of the institutional function increases. For instance, by the time discretionary review has been granted in the Supreme Court of the United States, the corrective function has been almost totally eclipsed by the institutional function, apart from criminal cases in which the death penalty has been imposed." *Ibid.*

As highest court of resort in criminal cases in its state wide jurisdiction, reviewing decisions of fourteen court of appeals, this Court has deliberately cast itself in a role like that played by the Supreme Court. Tex.R.App.Pro.Rule 200. Its stated concern is that legal reasons given for decisions by an intermediate court be of significance and free of conflict. *Ibid.* Only when a court of appeals has "so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such departure by a lower court," are we to exercise exceptional "power of supervision." *Id.*, Rule 200(c)(6). Carrying out our own role, with Justice Jackson, in all but substantial federal questions Judges must remind themselves that "we are not final because we are infallible, but we are infallible only because we are final." *Brown v. Allen*, 344 U.S. 443, 540, 73 S.Ct. 397, 427, 97 L.Ed. 469 (1953) (concurring opinion).

In the instant cause the opinion of the Court says at the outset:

"The [Dallas Court of Appeals] found the evidence insufficient to support the conviction and reversed. *Beardsley v. State*, 696 S.W.2d 214 (Tex.App.—Dallas 1985). We disagree."

The factual statement and discussion that follow indicate to me at least that an essential basis for disagreement is merely in interpretation and emphasis of certain facts. One example is the matter of appellant's remarks upon hearing report over Officer Barker's radio that the red Chevrolet was listed as stolen. The Dallas Court of Appeals related:

"Beardsley gave two false names and stated that he did not know the car was stolen. He claimed that he was 'just a hitchhiker.' "

*Beardsley v. State*, supra, at 214–215. It did not further notice the matter. The opinion of this Court, however, embellishes the incident by recounting more testimony from Officer Baker, *viz:*

"The officer testified that *Beardsley's shoulders drooped and his face sagged* upon hearing the report and said, "I didn't know the car was stolen. I'm just a hitchhiker."

Majority opinion, at 683.[1] From there its treatment intensifies.

Demonstrating at page 684 that his alibi is "in conflict with other evidence," the opinion demeans the weight of Long's testimony, finds appellant possessed a credit card with which gasoline was purchased May 1 (by someone not identified) and concludes:

"Beardley's statement to the arresting officer that he was 'just a hitchhiker' is also in conflict with his alibi."

*Id.*, at 684. Finally at 684, the incident is iterated vehemently, *viz:*

"Moreover, when questioned by the officer, Beardsley gave two false names and denied knowledge of the theft, *deliberately lying* when he stated 'I'm just a hitchhiker.' "

Appellant may not earn high marks for credibility in speaking to a police officer, but he did not testify, and to attribute to that remark such a high degree of incrimination is to say he is guilty because he is a liar. Just as we are coming around to understand that value of evidence adduced by the State is not enhanced by disbelieving testimony of an accused, *Wright v. State*, 603 S.W.2d 838 (Tex.Cr.App.1980) (Opinion on Rehearing, at 840), so also that a statement by accused is believed to be false does not constitute affirmative evidence to prove the State's case.

The gravamen of theft is in depriving a true owner of value or enjoyment of his property, *by exercising control over it* without his consent. *McClain v. State*,

---

1. All emphasis is mine throughout unless otherwise noted.

**688**

687 S.W.2d 350, at 353 (Tex.Cr.App.1985). The opinion of the Dallas Court of Appeals concentrates on meaning and application of the term, "exercise of control," and found evidence insufficient to prove that appellant exercised control over the car after it was stolen. The majority here never focuses on that particular element. Instead, at page 684, it undertakes to demolish his alibi defense, as if a failed defense somehow supplies proof of an essential element of an offense that must be shown beyond reasonable doubt. Unanswered is the finding below that evidence of "exercise of control" is insufficient.[2]

Finally, on the matter of evidentiary sufficiency to show appellant acted as a party with someone, presumably James Montgomery, his "knowledge of the true nature of the car," Majority opinion, at 684, means only that he knew Montgomery was exercising control over a stolen automobile. It does not prove that with "intent to promote or assist" his exercising such control, appellant solicited, encouraged, directed, aided or attempted to aid Montgomery in doing so. Nor does the fact that appellant "had substantial contacts with the stolen car," *id.*, at 685, make him a party. That fact may distinguish *Wygal v. State*, 555 S.W.2d 465 (Tex.Cr.App.1977), just as any other case may be "distinguished" in some fashion or other; but merely to distinguish another decision on its facts will not necessarily resolve correctly the evidentiary problem at hand.

In sum, giving deference to findings and reasons of the Dallas Court of Appeals, I am not satisfied the opinion of this Court demonstrates they are wrong and its decision is incorrect.

Accordingly, I respectfully dissent.

MILLER, J., joins in this opinion.

---

**2.** Positing that the jury rejected the alibi defense, the majority says, "Simply because the jury may have found the evidence [offered by accused] unconvincing is not grounds for finding insufficient evidence to support the verdict. *Anderson v. State*, 701 S.W.2d 868 [at 873] (Tex. Cr.App.1985)." That inscrutable observation cries out for some explanation.