Nash-T v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-93-100-CR

     TYRONE NASH,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 337th District Court
Harris County, Texas
Trial Court # 635,025
                                                                                                    

O P I N I O N
                                                                                                    

      This is an appeal by defendant Nash from his conviction for delivery of cocaine, for which
he was assessed fifteen years and one day in the Institutional Division of the Texas Department
of Criminal Justice.
      Defendant was indicted for delivery of over 400 grams of cocaine, tried under the law of
parties, found guilty by a jury, and punishment assessed by the court at fifteen years and one day
in the Texas Department of Criminal Justice.
      Defendant appeals on two points.
      Point One: "The evidence adduced by the prosecution was legally insufficient to support the
jury's verdict that [defendant] was guilty as a party of the offense of delivery of cocaine as alleged
in the indictment."
      Deputy Flagg of the Harris County Sheriff's Department was a narcotics detective assigned
to the Organized Crime Task Force. In April 1992 Flagg received information from an informant
that Anthony Hardy was a major drug dealer, and that cocaine could be purchased from him. 
Flagg contacted Hardy and set up a deal to buy 2 kilo's of cocaine for $37,000.00. They decided
to complete the transaction in Fuddruckers' parking lot on June 5, 1992.
      Flagg arrived at the parking lot about 4:20 p.m. and spotted Hardy's pickup truck. Defendant
Nash was standing about two feet in front of the vehicle looking around. Hardy came out of the
restaurant and spoke to defendant. Defendant went to the driver's side of Hardy's truck and
Hardy walked over to Flagg's car and got in. Hardy asked Flagg who was in a white pickup truck
that had just pulled in, and Flagg told him it was the people who had the money and waited to buy
the drugs. Actually, it was a fellow deputy. Flagg then asked Hardy who defendant was. Hardy
told Flagg defendant was "a young dude that works with me."
      Before counting the money, Hardy walked over to defendant and had another conversation
with him. After counting the money, Hardy called "the Colombians" to bring the cocaine. The
Colombians apparently were not familiar with the neighborhood and passed by the restaurant. 
Hardy saw them drive by and told Flagg he was going to send defendant to go catch them and
bring them back. Hardy then went over to defendant and talked to him, and defendant left in the
pickup truck. Defendant returned shortly with the Colombians behind him, and parked the pickup
truck in the same location.
      The Colombians pulled up next to Flagg's car and handed Hardy two packages wrapped in
brown postal tape. Flagg then called her surveillance team and the parties were arrested. 
Defendant, who was in Hardy's pickup truck at that time, attempted to back out of his parking spot
when the police arrived, but was stopped and arrested.
      Defendant testified that he was with Hardy to talk about "detailing" his pickup truck; that they
decided to stop and eat and were walking out of the restaurant when Hardy told defendant to wait
in the car while he talked with someone. Hardy then came back to the pickup and told defendant
to go track down some people in a blue Chrysler. Defendant testified the blue car turned into the
parking lot before he went after it, so he decided to leave for home. Halfway home he realized
he had Hardy's keys to a different truck and turned around to give them to Hardy. Defendant
pulled in and the police arrested him. Hardy testified that defendant was not a part of the drug
sale, but had only been "detailing his truck."
      On rebuttal Flagg testified that Hardy tried to negotiate a deal with her after his arrest where
he and defendant would arrange introductions to other persons engaged in criminal activities, and
specifically requested that defendant be out on bond so he could help Hardy set up cocaine deals.
      In reviewing the sufficiency of the evidence to support a conviction, the evidence must be
viewed in the light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, S.Ct., 443 U.S. 307; Butler v. State, (Tex. Crim. App.) 769 S.W.2d 234.
      The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight
to be given their testimony. Chambers v. State, (Tex. Crim. App.) 805 S.W.2d 459.
      In assessing the sufficiency of the evidence to convict a party of an offense, the evidence must
directly or circumstantially show defendant acted with intent to promote or assist in the
commission of the offense by soliciting, encouraging, directing, aiding or attempting to aid another
person in the commission of the delivery. Martin v. State, (Tex. Crim. App.) 753 S.W.2d 384. 
In determining whether one has acted as a party in the commission of a criminal offense, the jury
may look to events occurring before, during and after the offense, and reliance may be placed on
actions which show an understanding and common design to engage in an act. Moore v. State,
(Tex. App.—Houston 14) 804 S.W.2d 165. Participation in an enterprise may be inferred from
the circumstances and need not be shown by direct evidence. Beardsley v. State, (Tex. Crim.
App.) 738 S.W.2d 681.
      Deputy Flagg testified she believed defendant was a lookout, and that she based this on his
behavior and her experiences on previous drug deals. Hardy said defendant "worked with him;"
talked with defendant three times during the transaction, and sent defendant after the Colombians
who had the cocaine. When the police arrived, defendant tried to back out of his parking spot but
was stopped. Deputy Flagg testified Hardy wanted defendant out on bond so he could help him
set up some drug stings for the police. This is evidence that Hardy and defendant were involved
in making drug sales.
      A rational trier of fact could have found that defendant was a party to the offense beyond a
reasonable doubt.
      Point One is overruled.
      Point Two: "The trial court erred in permitting the prosecution to misstate the testimony
when he argued that Deputy Flagg had testified that "She's had a friend killed in the line of duty,"
during his final argument in the guilt or innocent stage of the proceedings."
      During the State's case in chief the prosecutor had Deputy Flagg describe how the drug
transaction played out. Flagg explained that she started to panic when she found out that three
other people beside Hardy were involved in the drug transaction. The prosecutor asked her to
explain why she was worried about being out numbered, and she said, "I've had fellow officers
shot and caught in the middle." The prosecutor then asked, "We're talking about a fairly
dangerous tense situation," to which Flagg replied, "Yes."
      In the State's closing argument, the prosecutor said:
"Remember the lifestyles of drug dealers and remember this also: Remember that these
narcotic officers like Betty Flagg, Walt Hudson, the ones who didn't come in and talk to
you, S. R. Williams, and others, are out there every day. They are out there every day
and are risking their lives because as Betty told you, she's had a friend killed in the line
of duty."
      Defense:      "I object to that, Your Honor. She didn't say that. That's not testimony, that's
improper."
      The Court:   "Sustained"
      After the court sustained the objection, the defendant asked for no further relief. To preserve
error for review a defendant must pursue his objection until an adverse ruling is received. Cook
v. State, (Tex. Crim. App.) 741 S.W.2d 928.
      After defendant's objection was sustained defendant did not ask for an instruction to
disregard, and move for a mistrial. Thus no error has been preserved for review. Nethery v.
State, (Tex. Crim. App.) 692 S.W.2d 686, 701.
      Point Two is overruled. The judgment is affirmed.
 
                                                                   FRANK G. McDONALD
                                                                   Chief Justice (Retired)


Before Chief Justice Thomas,
      Justice Cummings, and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed April 13, 1994
Do not publish