Kieschnick v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-346-CR

     NOBLE LEE KIESCHNICK,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the County Court
Somervell County, Texas
Trial Court # 3760-M
                                                                                                    

O P I N I O N
                                                                                                    

      Cindy and Welby Simpson live on County Line Road, which runs along the boundary between
Somervell County and Bosque County. They bought two Chinese Pugs at different times in the
Spring of 1994. In July, they returned home to find the dogs missing. A search of the "sparsely
populated" area and inquiries to neighbors failed to locate them. In September, they learned from
their veterinarian that he had boarded similar dogs for a two-week period but, because no one
claimed them, had given them to a lady in Walnut Springs. Following this lead, Cindy traced the
dogs to Nobel Kieschnick. When he did not surrender them, he was charged with theft of property
having a value between $500 and $1,500. Tex. Penal Code Ann. §§ 31.01, 31.03 (Vernon
1994). A jury returned a verdict of guilt, and the court assessed a $2,000 fine.
      In two points, Kieschnick attacks the sufficiency of the evidence to sustain the verdict. In
particular, the points assert that the evidence is insufficient to establish (1) the identity of the
property, i.e., the dogs, and (2) intent to acquire or exercise control over property of another. 
Both points essentially rely on the claim that the State failed to prove that the Simpsons owned the
particular dogs that were in Kieschnick's possession.
      We will employ the standard of review that has been adopted for all cases. Geesa v. State,
820 S.W.2d 154, 156-57 (Tex. Crim. App. 1991). Under this standard, evidence will sustain a
conviction if, viewing it in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Matson v. State, 819
S.W.2d 839, 843 (Tex. Crim. App. 1991). "This standard is the same for both direct and
circumstantial evidence cases." Green v. State, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992),
cert. denied, ——— U.S. ———, 113 S.Ct. 1819, 123 L.Ed.2d 449 (1993). 
      The evidence shows that two Chinese Pugs were found on July 17, 1994, in the vicinity of
County Line Road and eventually delivered to Dr. Mike Jones, a veterinarian. Dr. Jones and his
staff searched his computerized records for similar dogs that had been in his clinic during the past
five years and contacted their owners to determine if any were missing. Failing to find the owner
after two weeks, Dr. Jones delivered the dogs to Shelly LeMays, who said that she knew someone
who might "adopt" them. LeMays delivered the dogs to Julie and Noble Kieschnick, her sister
and brother-in-law, who live in Cedar Hill, Texas. 
      After Dr. Jones gave LeMays' phone number to her, Cindy contacted LeMays about the dogs. 
LeMays talked to both her sister and Cindy over several days but failed to resolve the matter. She
ultimately gave Cindy the Kieschnicks' first names and telephone number.
      Cindy called to inquire about the dogs. When Kieschnick returned the call, he refused to tell
her his last name or where he lived, but stated that he had paid "veterinary expenses and boarding
bills" of $500 for the dogs. He told Cindy that his wife, Julie, had "been up all night crying when
she found out that the owners of the dogs appeared" and that "they did not want to give up the
dogs." When Cindy offered to go to Cedar Hill and pick the dogs up on the following Friday,
Kieschnick refused, saying he would have to talk to Julie. Several days later, he called Cindy
back, telling her how attached to the dogs Julie had become and that the expenses were "upwards
of $1,000." The Simpsons then complained to the Somervell County Sheriff's Department.
      Deputy Doug Ransom, an investigator with the Sheriff's Department, left a message on
Kieschnick's answering machine. Kieschnick called him back, confirmed that he had two dogs,
and wanted "around $1,000" in expenses—$500 in vet bills and $14-16 per day for boarding the
dogs. Ransom said that Julie Kieschnick told him the vet bill was around $350. He also stated
that during their first conversation Kieschnick said "he'd rather not" give his last name, but
ultimately gave the officer his name and address. Ransom encouraged the Kieschnicks to "settle"
the matter. He said, however, that they did not indicate a willingness to return the dogs.
      Although the Simpsons had American Kennel Club papers they had received when they
purchased the dogs, no steps had been taken to transfer the registrations to themselves. Dr. Jones
said that a positive identification of the animals could not be made from the descriptions on the
papers. He also said that there were "approximately ten" similar dogs in Somervell County listed
in his records. Welby Simpson testified that he could not say that the dogs that Kieschnick had
were his dogs because he had not had an opportunity to see them.
      Julie Kieschnick testified that she got the dogs from her sister, who had gotten them from a
veterinarian in Glen Rose. She said her sister later told her that Cindy was looking for the dogs. 
After Julie had several telephone conversations with her sister, Noble Kieschnick called the
Simpsons but did not resolve the matter. Julie said that she never denied the Simpsons the
opportunity to come to see the dogs and that they "never offered to show us any proof of any kind
of ownership for these dogs."
      Kieschnick testified that he had not really wanted the dogs and had told Julie if she accepted
them she would have to take care of them. He said that when he first contacted Cindy:
I told her that we had a couple of pugs that she had been inquiring about and that my wife
was attached to them. She would be willing to give the dogs up, however, provided we were
compensated for expenses and that they could prove ownership such as photographs of them
with the dogs and possibly papers.
. . .
I told her that we had figured our expenses to be approximately $1,000.
He further said that he did not deny either the Simpsons or Ransom the right to see the dogs, but
no one ever came to identify them. He said that the AKC papers do not prove ownership because
"[t]here's no serial number on a dog that matches the serial number on these papers." He said that
at the time of trial the dogs were still at his home and he was still willing for the Simpsons to
identify the dogs as theirs.
      The jury, as the trier of fact, is free to accept or reject any or all of the evidence presented
by either party. Beardsley v. State, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987). 
Reconciliation of conflicts in the evidence is solely a function of the trier of fact. Bowden v. State,
628 S.W.2d 782, 784 (Tex. Crim. App. 1982). 
      In making our assessment of the sufficiency of the evidence, we bear in mind that this is a
circumstantial-evidence case in which no witness identified the dogs possessed by Kieschnick as
being those lost by the Simpsons. Viewing the evidence in the light most favorable to the verdict,
however, we find that there is conclusive evidence that the dogs delivered to Dr. Jones were the
same dogs possessed by Kieschnick. Thus, the question is whether the evidence is sufficient to
prove circumstantially that the dogs that the Simpsons lost were the same dogs delivered to Dr.
Jones. 
      Finding evidence that (1) the Simpsons lost their dogs during July 1994 and that the dogs
delivered to Dr. Jones were found on July 17, 1994, (2) the Simpsons' dogs were lost on County
Line Road in a sparsely populated area of the county, the same road on which the dogs delivered
to Dr. Jones were found, and (3) a small number of similar dogs were listed in Dr. Jones records,
none of which were reported missing by their owners, we believe that a rational trier of fact could
have found beyond a reasonable doubt that the dogs the Simpsons lost were the same ones
Kieschnick possessed. See Matson, 819 S.W.2d at 843. Thus, Kieschnick's points are without
merit and are overruled. 
      We affirm the judgment.

                                                                                 BILL VANCE
                                                                                 Justice
Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
          (Justice Cummings dissenting)
Affirmed
Opinion delivered and filed October 25, 1995
Do not publish Released for publication November 22, 1995. See Tex. R. App. P. 90(c) 



lude that
Daw’s memorandum constitutes a sufficient written waiver of “the appearance, confrontation,
and cross-examination of witnesses” as required by article 1.15.
      Daw consented to a stipulation of evidence consistent with article 1.15. Such a stipulation
“includes inter alia agreements as to what particular evidence or testimony would be, if
presented in full in open court.” Stone v. State, 919 S.W.2d 424, 426 (Tex. Crim. App. 1996)
(quoting Robinson v. State, 739 S.W.2d 795, 800 n.5 (Tex. Crim. App. 1987) (per curiam)). 
      Although the record contains Daw’s consent to a stipulation, the record contains no
stipulation of evidence. See Messer v. State, 729 S.W.2d 694, 698 (Tex. Crim. App. 1986)
(op. on reh’g). Instead, the record contains Daw’s “Sworn Judicial Confession” which
appears in the memorandum and his testimony admitting his guilt of all twenty-three
burglaries. A judicial confession filed in the clerk’s record constitutes “evidence introduced
into the record” which may be considered by an appellate court in deciding whether the State
met its evidentiary burden under article 1.15. Pitts v. State, 916 S.W.2d 507, 510 (Tex. Crim.
App. 1996).
      A judicial confession, standing alone, suffices to establish the guilt of a defendant who has
pleaded guilty and to satisfy article 1.15. Dinnery v. State, 592 S.W.2d 343, 353 (Tex. Crim.
App. [Panel Op.] 1980) (op. on reh’g); Monse v. State, 990 S.W.2d 315, 318 (Tex.
App.—Corpus Christi 1999, pet. ref’d). In Daw’s case, the clerk’s record contains a written
judicial confession, and the reporter’s record contains Daw’s oral judicial confession. Thus,
the State satisfied its burden under article 1.15 “to introduce evidence into the record showing
the guilt of the defendant.” Tex. Code Crim. Proc. Ann. art. 1.15.
 

      Accordingly, we overrule Daw’s sole issue and affirm the judgment.
 
                                                                               REX D. DAVIS
                                                                               Chief Justice


Before Chief Justice Davis
            Justice Vance and
            Justice Gray
Affirmed
Opinion delivered and filed April 12, 2000
Publish