COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-188-CR
  
  
TWAN 
TYLER                                                                        APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 297TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        A 
jury convicted Appellant Twan Tyler of murder and sentenced him to seventy 
years’ confinement in the Institutional Division of the Texas Department of 
Criminal Justice.  Appellant brings two points on appeal, challenging the 
legal and factual sufficiency of the evidence negating his self-defense 
claim.  Because we hold that the evidence is both legally and factually 
sufficient to negate Appellant’s claim of self-defense, we affirm the trial 
court’s judgment.
        Appellant 
testified to the following facts.  After drinking with a friend, Robert 
Bankers, Appellant returned to his home with Bankers.  Appellant lived with 
Complainant Vivian Morrison their child, and her two children.  That night, 
Appellant told Morrison that he was moving back to Louisiana.  She got very 
angry and stabbed him in the stomach.  Appellant testified that when 
Morrison stabbed him, he began to feel numb and developed a burning pain.  
He testified that he was in fear for his life and that Morrison said she was 
going to kill him.  He said he was afraid because of the numbness he felt 
from the stab wound to his abdomen and that he was trying to get away.  
Appellant and Morrison struggled over the knife.  Appellant grabbed a 
hammer and hit Morrison in the head with it.  He ran out of the bedroom and 
Morrison followed. In the kitchen, Morrison was doused with gasoline.  The 
State argued that Appellant intentionally poured gasoline over her.  
Appellant testified that he reached for the gas can to defend himself and that 
the gasoline spilled on Morrison as he swung the gas can.
        Bankers’s 
testimony differed from Appellant’s.  According to Bankers, he was 
awakened by Morrison’s screams.  He went to Morrison and Appellant’s 
bedroom and saw Appellant on top of Morrison.  Appellant told him that 
Morrison had stabbed him.  Morrison told Bankers to take the baby and call 
911.  Bankers took the baby outside and then returned to find Appellant and 
Morrison in the kitchen struggling over the knife.  There was blood on the 
floor.  Bankers saw the baby back inside the house and took him back 
outside.  When Bankers returned, Appellant was holding Morrison by the 
hair, and according to Bankers, trying to pour gasoline on her back.  
Bankers testified that the two were close to the stove and that Appellant was 
trying to turn it on.  Morrison was trying to escape.  Bankers 
testified that Appellant said he was going to burn the house down.  Because 
Bankers was afraid the house might explode, he went back outside.
        Morrison’s 
young daughter, Ashley, testified.  She stated that she awoke and went to 
the kitchen, where she saw Appellant and her mother.  According to Ashley, 
Appellant had Morrison’s face against the wall by the stove, and there was 
blood on the floor and on the walls.  Ashley said Morrison was not pushing 
or kicking Appellant.  Ashley went back to her room and stayed until the 
police came.
        Appellant 
denied cutting Morrison with the knife.  He testified that after he hit her 
with the hammer, he got off Morrison and went toward the bathroom.  He 
testified that Morrison came after him with the knife and threatened to kill 
him.  In response, he pulled her hair, causing her to bleed.  He 
denied any intention to burn down the house.  He admitted to grabbing the 
knife but testified that he did not remember cutting Morrison.
        No 
one witnessed what happened after Ashley went back to her room and Bankers left 
the house.  When Appellant came outside, he told Bankers to check on 
Morrison because he might have killed her.  Then, Appellant ran to his 
sister’s home and told her he had been stabbed by a Mexican.  Bankers had 
called 911, but when the ambulance arrived, Morrison was dead.
        Police 
officers responded to the crime scene and then went to Appellant’s sister’s 
apartment.  They found Appellant lying face down in a pool of blood. He had 
a stab wound to his abdomen.  There was a great deal of blood on Appellant 
and his clothing.  His condition was critical, and he was taken to John 
Peter Smith Hospital.
        At 
the crime scene, David Ukle, Fort Worth Crime Scene Investigator, saw blood on 
the front carpet and a hammer in the living room.  The house smelled of 
gasoline. In the kitchen he saw two rags, one on the stove and one by 
Morrison’s foot.  The rags were singed and smelled of gasoline.  He 
also saw a large knife on the stove and a smaller knife on the floor.  In 
the bedroom, Ukle found blood on the bed and the floor.
        The 
medical examiner who performed the autopsy on Morrison testified that there were 
two causes of death, one, a downward stab wound piercing the right lung, the 
pericardial sac, and the right ventricle of Morrison’s heart, and two, blunt 
force trauma to the head.
        Appellant 
does not challenge the sufficiency of the evidence that he intentionally caused 
the death of Morrison.  He challenges only the jury’s determination that 
he was not acting in self-defense.
        When 
the issue of self-defense is raised, the State has the burden of persuasion to 
disprove self-defense.[2]  This burden does not 
require the State to produce evidence disproving the defense; it requires the 
State to prove its case beyond a reasonable doubt.[3]  
In reviewing the legal sufficiency of the evidence to support a conviction and 
disprove a defense, we view all the evidence in the light most favorable to the 
verdict in order to determine whether any rational trier of fact could have 
found the essential elements of the offense beyond a reasonable doubt and also 
would have found against the accused on the defensive issue beyond a reasonable 
doubt.[4]  This standard gives full play to the 
responsibility of the trier of fact to resolve conflicts in the testimony, to 
weigh the evidence, and to draw reasonable inferences from basic facts to 
ultimate facts.[5]  When performing a legal 
sufficiency review, we may not sit as a thirteenth juror, re-evaluating the 
weight and credibility of the evidence and, thus, substituting our judgment for 
that of the fact finder.[6]
        As 
the State points out, where conflicting theories exist in a case, the trier of 
fact must weigh the evidence and judge the credibility of the witnesses, 
considering those conflicting theories.  It is the duty of the trier of 
fact, and not the reviewing court, to resolve conflicting testimony.  And 
it is the trier of fact, as the sole determiner of the credibility of the 
self-defense evidence, who has the option of accepting or rejecting evidence 
offered by the accused.[7]
        The 
Texas Court of Criminal Appeals has recently restated the factual sufficiency 
standard of review:
 
There 
is only one question to be answered in a factual-sufficiency review: Considering 
all of the evidence in a neutral light, was a jury rationally justified in 
finding guilt beyond a reasonable doubt? However, there are two ways in which 
the evidence may be insufficient. First, when considered by itself, evidence 
supporting the verdict may be too weak to support the finding of guilt beyond a 
reasonable doubt. Second, there may be both evidence supporting the verdict and 
evidence contrary to the verdict. Weighing all the evidence under this balancing 
scale, the contrary evidence may be strong enough that the 
beyond-a-reasonable-doubt standard could not have been met, so the guilty 
verdict should not stand. This standard acknowledges that evidence of guilt can 
‘preponderate’ in favor of conviction but still be insufficient to prove the 
elements of the crime beyond a reasonable doubt. Stated another way, evidence 
supporting guilt can ‘outweigh’ the contrary proof and still be factually 
insufficient under a beyond-a-reasonable-doubt standard.[8]
 
        A 
proper factual sufficiency review must include a discussion of the most 
important and relevant evidence that supports the appellant’s complaint on 
appeal.[9]
        After 
carefully reviewing the evidence under both the legal sufficiency standard and 
the factual sufficiency standard, we hold the evidence sufficient to support the 
jury’s verdict.  The evidence reflects a violent argument between 
Appellant and Morrison.  Both used at least one deadly weapon, and both 
evidenced an intent to cause death.  The evidence does not reveal that 
Appellant retreated as required by the law of self-defense.[10]  
Although Appellant had the opportunity to retreat, he did not.  Instead, he 
stayed to fight. Clearly there was evidence of sudden passion.  Even if the 
jury believed Appellant’s version of the story, that he responded to 
Morrison‘s attack and that he was in fear for his life, that evidence is as 
consistent with murder in the heat of sudden passion arising from an adequate 
cause as it is with self-defense.[11]  If the 
jury failed to believe any portion of Appellant’s testimony, however, the 
evidence supports a finding of murder without the mitigating punishment factor 
of sudden passion.  Consequently, we cannot say that no rational trier of 
fact could have found the essential elements of the offense beyond a reasonable 
doubt and also could have found against Appellant on his issue of self-defense, 
nor can we say that the jury was not rationally justified in finding Appellant 
guilty beyond a reasonable doubt.  Because we hold that the evidence is 
both legally and factually sufficient to support the jury’s verdict, we affirm 
the trial court’s judgment.
 
                                                                  LEE 
ANN DAUPHINOT
                                                                  JUSTICE
 
  
PANEL A:   LIVINGSTON, 
DAUPHINOT, and MCCOY, JJ. 
 
DO NOT 
PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
May 27, 2004


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Saxton v. State, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991).
3.  
Id., at 913.
4.  
Id., at 914.
5.  
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).
6.  
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. 
denied, 529 U.S. 1131 (2000).
7.  
Saxton, 804 S.W.2d at 913-14; Beardsley v. State, 738 S.W.2d 681, 
684 (Tex. Crim. App. 1987); Manuel v. State, 981 S.W.2d 65, 68 (Tex. 
App.—Fort Worth 1998), aff'd, 994 S.W.2d 658 (Tex. Crim. App. 1999).
8.  
Zuniga v. State, No. 539-02, 2004 WL 840786, at *7 (Tex. Crim. App. Apr. 
21, 2004) (citations omitted).
9.  
Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
10.  
See Tex. Penal Code Ann. § 
9.32(a)(2) (Vernon 2003).
11.  
See id. § 19.02(a).