Twan Tyler v. The State of Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-188-CR

TWAN TYLER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 297
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

A jury convicted Appellant Twan Tyler of murder and sentenced him to seventy years’ confinement in the Institutional Division of the Texas Department of Criminal Justice.  Appellant brings two points on appeal, challenging the legal and factual sufficiency of the evidence negating his self-defense claim.  Because we hold that the evidence is both legally and factually sufficient to negate Appellant’s claim of self-defense, we affirm the trial court’s judgment.

Appellant testified to the following facts.  After drinking with a friend, Robert Bankers, Appellant returned to his home with Bankers.  Appellant lived with Complainant Vivian Morrison their child, and her two children.  That night, Appellant told Morrison that he was moving back to Louisiana.  She got very angry and stabbed him in the stomach.  Appellant testified that when Morrison stabbed him, he began to feel numb and developed a burning pain.  He testified that he was in fear for his life and that Morrison said she was going to kill him.  He said he was afraid because of the numbness he felt from the stab wound to his abdomen and that he was trying to get away.  Appellant and Morrison struggled over the knife.  Appellant grabbed a hammer and hit Morrison in the head with it.  He ran out of the bedroom and Morrison followed.  In the kitchen, Morrison was doused with gasoline.  The State argued that Appellant intentionally poured gasoline over her.  Appellant testified that he reached for the gas can to defend himself and that the gasoline spilled on Morrison as he swung the gas can.

Bankers’s testimony differed from Appellant’s.  According to Bankers, he was awakened by Morrison’s screams.  He went to Morrison and Appellant’s bedroom and saw Appellant on top of Morrison.  Appellant told him that Morrison had stabbed him.  Morrison told Bankers to take the baby and call 911.  Bankers took the baby outside and then returned to find Appellant and Morrison in the kitchen struggling over the knife.  There was blood on the floor.  Bankers saw the baby back inside the house and took him back outside.  When Bankers returned, Appellant was holding Morrison by the hair, and according to Bankers, trying to pour gasoline on her back.  Bankers testified that the two were close to the stove and that Appellant was trying to turn it on.  Morrison was trying to escape.  Bankers testified that Appellant said he was going to burn the house down.  Because Bankers was afraid the house might explode, he went back outside.

Morrison’s young daughter, Ashley, testified.  She stated that she awoke and went to the kitchen, where she saw Appellant and her mother.  According to Ashley, Appellant had Morrison’s face against the wall by the stove, and there was blood on the floor and on the walls.  Ashley said Morrison was not pushing or kicking Appellant.  Ashley went back to her room and stayed until the police came.

Appellant denied cutting Morrison with the knife.  He testified that after he hit her with the hammer, he got off Morrison and went toward the bathroom.  He testified that Morrison came after him with the knife and threatened to kill him.  In response, he pulled her hair, causing her to bleed.  He denied any intention to burn down the house.  He admitted to grabbing the knife but testified that he did not remember cutting Morrison.

No one witnessed what happened after Ashley went back to her room and Bankers left the house.  When Appellant came outside, he told Bankers to check on Morrison because he might have killed her.  Then, Appellant ran to his sister’s home and told her he had been stabbed by a Mexican.  Bankers had called 911, but when the ambulance arrived, Morrison was dead.

Police officers responded to the crime scene and then went to Appellant’s sister’s apartment.  They found Appellant lying face down in a pool of blood.  He had a stab wound to his abdomen.  There was a great deal of blood on Appellant and his clothing.  His condition was critical, and he was taken to John Peter Smith Hospital.

At the crime scene, David Ukle, Fort Worth Crime Scene Investigator, saw blood on the front carpet and a hammer in the living room.  The house smelled of gasoline.  In the kitchen he saw two rags, one on the stove and one by Morrison’s foot.  The rags were singed and smelled of gasoline.  He also saw a large knife on the stove and a smaller knife on the floor.  In the bedroom, Ukle found blood on the bed and the floor.

The medical examiner who performed the autopsy on Morrison testified that there were two causes of death, one, a downward stab wound piercing the right lung, the pericardial sac, and the right ventricle of Morrison’s heart, and two, blunt force trauma to the head.

Appellant does not challenge the sufficiency of the evidence that he intentionally caused the death of Morrison.  He challenges only the jury’s determination that he was not acting in self-defense.

When the issue of self-defense is raised, the State has the burden of persuasion to disprove self-defense.
(footnote: 2)  This burden does not require the State to produce evidence disproving the defense; it requires the State to prove its case beyond a reasonable doubt.
(footnote: 3)  In reviewing the legal sufficiency of the evidence to support a conviction and disprove a defense, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt and also would have found against the accused on the defensive issue beyond a reasonable doubt.
(footnote: 4)  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.
(footnote: 5)  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.
(footnote: 6)
 As the State points out, where conflicting theories exist in a case, the trier of fact must weigh the evidence and judge the credibility of the witnesses, considering those conflicting theories.  It is the duty of the trier of fact, and not the reviewing court, to resolve conflicting testimony.  And it is the trier of fact, as the sole determiner of the credibility of the self-defense evidence, who has the option of accepting or rejecting evidence offered by the accused.
(footnote: 7)
 The Texas Court of Criminal Appeals has recently restated the factual sufficiency standard of review:

There is only one question to be answered in a factual-sufficiency review:  Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt? However, there are two ways in which the evidence may be insufficient.  First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt.  Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand.  This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.  Stated another way, evidence supporting guilt can ‘outweigh’ the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard.
(footnote: 8)
 A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.
(footnote: 9)
 After carefully reviewing the evidence under both the legal sufficiency standard and the factual sufficiency standard, we hold the evidence sufficient to support the jury’s verdict.  The evidence reflects a violent argument between Appellant and Morrison.  Both used at least one deadly weapon, and both evidenced an intent to cause death.  The evidence does not reveal that Appellant retreated as required by the law of self-defense.
(footnote: 10)  Although Appellant had the opportunity to retreat, he did not.  Instead, he stayed to fight.  Clearly there was evidence of sudden passion.  Even if the jury believed Appellant’s version of the story, that he responded to Morrison‘s attack and that he was in fear for his life, that evidence is as consistent with murder in the heat of sudden passion arising from an adequate cause as it is with self-defense.
(footnote: 11)  If the jury failed to believe any portion of Appellant’s testimony, however, the evidence supports a finding of murder without the mitigating punishment factor of sudden passion.  Consequently, we cannot say that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt and also could have found against Appellant on his issue of self-defense, nor can we say that the jury was not rationally justified in finding Appellant guilty beyond a reasonable doubt.  Because we hold that the evidence is both legally and factually sufficient to support the jury’s verdict, we affirm the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL A: LIVINGSTON, DAUPHINOT, and MCCOY, JJ. 

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  May 27, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Saxton v. State
, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991).

3:
Id.
, at 913.

4:
Id.
, at 914.

5:
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

6:
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

7:
Saxton
, 804 S.W.2d at 913-14;
 Beardsley v. State
, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987); 
Manuel v. State
, 981 S.W.2d 65, 68 (Tex. App.—Fort Worth 1998), 
aff'd
, 994 S.W.2d 658 (Tex. Crim. App. 1999).

8:
Zuniga v. State
, No. 539-02, 2004 WL 840786, at *7 (Tex. Crim. App. Apr. 21, 2004) (citations omitted).

9:
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

10:
See
 
Tex. Penal Code Ann.
 § 9.32(a)(2) (Vernon 2003).

11:
See id.
 § 19.02(a).