CLAIR V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-03-507-CR

DEBRA GATLIN CLAIR APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Introduction

A jury convicted Appellant Debra Gatlin Clair of manslaughter after her fifteen-year-old daughter died from a heroin injection.  In four issues, Appellant argues that the trial court erred by putting her to trial without adequate time to prepare her defense, that the evidence is legally and factually insufficient to support her conviction, and that the trial court erred by charging the jury on the law of parties.  We affirm.

Background

Appellant found her daughter, Tiffany, dead on the floor of Appellant’s apartment in Everman late on May 3, 2001, or early on May 4.  At trial, Kennedale Police Officer Steven Carlson testified that he went to Appellant’s apartment in response to a 911 call at 12:37 A.M. on May 4.  Carlson realized that Tiffany was dead as soon as he saw her, but he attempted CPR anyway. Paramedics soon arrived and confirmed that she was dead. 

Dr. Marc Krouse, the Deputy Chief Medical Examiner in the Tarrant County Medical Examiner’s Office, testified that he found a single venipuncture in Tiffany’s right arm, leading him to suspect that she had received an intravenous injection.  A comprehensive forensic toxicology screening found morphine, 6-monoacetylmorphine (“6-MAM”), and codeine—all byproducts of heroin—in Tiffany’s urine but not her blood.  Dr. Krause testified that the presence of these chemicals in her urine but not her blood indicated that Tiffany’s was “a delayed death, some period of time after [the heroin] was injected” and that Tiffany survived for four to five hours before dying.  The toxicology screening also revealed the presence of gabapentin (an antiseizure medication) and alprazolam (the generic name for the prescription drug Xanax)  in Tiffany’s body.  Dr. Krause testified that Tiffany’s death “was due to ingestion or injection of drugs, including codeine, morphine, and gabapentin . . . [with] alprazolam playing a role.”  Dr. Krause testified that the drugs caused “respiratory depression”—in other words, they caused Tiffany to stop breathing.  According to Dr. Krause, the heroin would probably have killed Tiffany even without the alprazolam in her system.  While the autopsy report stated that the presence of 6-MAM “indicates morphine presence from heroine ingestion or injection,” Dr. Krause testified that he found no evidence that Tiffany had “ingested” heroin as opposed to injecting it.

Detective Wesley McCullough of the Everman Police Department testified that he interviewed Appellant on May 4, 2001, at her apartment following the discovery of Tiffany’s body.  Appellant told him that Bradley Waltermire, the son of Appellant’s ex-boyfriend, had visited Tiffany at the apartment earlier in the day and left sometime in the afternoon, that Appellant later went out to give Waltermire a ride back to the apartment, and that Appellant and Waltermire found Tiffany dead upon their return. 

On May 9, 2001, Appellant called Detective McCullough and arranged to meet him at the Everman Police Department, where she presented him with two syringes and a substance she identified as “black tar heroin.”  McCullough testified that Appellant told him that she found the heroin after Waltermire asked her if his heroin was still in her apartment.  Appellant told McCullough that she believed Waltermire brought the heroin to the apartment and that he and Tiffany “shot up” in the back bedroom.  Appellant then gave McCullough a written statement in which she wrote that Waltermire brought two bags of heroin to the apartment on May 3 at 12:00 or 1:00 o’clock P.M., that Tiffany told Waltermire she wanted some of the heroin but Appellant told her “absolutely not,” and that Tiffany and Waltermire then went into the bathroom and came out “higher than a kite.”  Tiffany lay on the couch and “was out about 5 [seconds] later.”  Appellant wrote that Waltermire left the apartment “right after that” at approximately 2:00 P.M.  Between 8:00 and 8:30 P.M., Appellant wrote, Waltermire phoned Appellant and asked her to pick him up and drive him back to the apartment.  Appellant told Waltermire that she could not awaken Tiffany but left to pick up Waltermire when he insisted that she do so.  When they returned, they found Tiffany dead on the floor. 

After interviewing Waltermire, McCullough asked Appellant to return to the police station for further questioning on May 10.  Appellant gave McCullough another written statement.  This time, she wrote that Waltermire injected not only himself and Tiffany with heroin on May 3, but Appellant, too.  Her entire second statement reads as follows:

I, Debbie Clair state that I shot up heroin one time on the 3rd approximately 12-1:00 PM.  Brad had come over around that time and brought a bag of heroin and 2 syringes.  He left around 2:00 or so and called me back approximately 8-8:30 PM. and said you need to come get me cause he got caught with Zanax in his pocket and his girlfriend kicked him out.  I left around 8-8:30 to pick him up.  We stopped at a store in Hurst and he used a pay phone.  Someone met him there, he left my cell phone in the guys [sic] car & we waited for about 45 mins to an hour to get my phone back.  Brad had bought dope from him at a convenient [sic] store.  We left there and went to the apt. and that’s when I found my baby dead.  Before I went to pick up Brad he had shot up himself, my daughter and myself.  Brad and I had went to the bank earlier that day & made a $200.00 withdrawal.  He accused Tiffany of stealing $50. off the kitchen cabinet and said that was part of his rent money.  To shut him up I gave him a $100. for his rent.

A grand jury indicted Appellant for manslaughter.
(footnote: 2)  On August 15, 2003—eleven days before trial—she was reindicted.  The new indictment alleged as follows:

Debra Gatlin Clair . . . on or about the 3rd day of May, 2001, did then and there recklessly, to-wit: by supplying Tiffany Clair, a person younger than 18 years of age, with a controlled substance, namely: heroin, cause the death of an individual, Tiffany Clair, by injecting Tiffany Clair with a controlled substance, namely: heroin.

Paragraph two: And it is further presented in and to said court that the defendant . . . did then and there recklessly cause the death of Tiffany Clair, by failing to seek reasonable medical care for Tiffany Clair when the defendant had knowledge that Tiffany Clair had ingested a dangerous substance, namely: heroin, at a time that the defendant had a legal duty to act because the defendant was the parent of Tiffany Clair, a child younger than 17 years of age.
(footnote: 3) 

Appellant pleaded “not guilty.”  Her case was tried to a jury.  The court’s charge included an instruction on the law of parties.  The jury found Appellant guilty of manslaughter and assessed her punishment at fifteen years’ confinement.  The trial court entered judgment accordingly.  This appeal followed.

Discussion

Time between indictment and trial

In her first point, Appellant argues that the trial court erred by putting her to trial on the new indictment “without time to prepare” as required by articles 27.11 and 28.10 of the code of criminal procedure.  
See 
Tex. Code Crim. Proc. Ann.
 arts.
 27.11, 28.10 (Vernon 1989).  We disagree.

Article 27.11 provides that a defendant shall be allowed ten days after indictment to file written pleadings. 
 Id.
 art.
 27.11.  In cases where the defendant is entitled to service of an indictment, the ten days run from the time of service. 
 Id.
 art.
 27.12.  If the defendant is on bail when the indictment is presented, service is not required, but the clerk on request shall “deliver” a copy of the indictment to the defendant or counsel at the earliest possible time. 
 Id.
 
 art.
 
25.03.  If the State amends an indictment, the defendant is entitled upon request to ten days to respond to the amended indictment. 
 Id.
 art.
 
28.10(a).

The date of the original indictment does not appear in the record.  Appellant’s trial was specially set for August 26, 2003, a date selected by her trial counsel.  On August 15, 2003, the grand jury reindicted Appellant under a different indictment number.  That same day, one of the trial prosecutors delivered a copy of the new indictment to the office of Appellant’s trial counsel. According to counsel’s argument to the trial court, he was on vacation that day; the indictment was delivered to his associate attorney, who was also on vacation but happened to be at the office when the indictment was delivered. 

When the trial court called the case to trial on August 26, the State dismissed the first indictment.  Appellant’s trial counsel announced “not ready” for trial on the new indictment, objected that he was not afforded adequate time to prepare a defense to the new indictment, and made an oral motion for continuance.  The trial court overruled his objection and motion, and the case proceeded to trial. 

On appeal, Appellant argues that the trial court “circumvented the spirit of the law regarding the time to prepare for trial” after the indictment was “amended.”  By appealing to the “spirit” of the law, Appellant tacitly admits, as she must, that the eleven days between the date of the new indictment and the date of trial satisfy the ten-day requirement of the 
letter
 of the law set out in article 27.11.  
See
 id.
 
art.
 27.11.  Service of the new indictment was not required because Appellant was free on bail.  
See 
id.
 art.
 25.03.  Thus, the ten days began to run from the date the grand jury handed down the new indictment, August 15.
  See id.
 art.
 27.12.  Although Appellant calls the August 15 indictment an “amendment,” it was in fact a new indictment with a different number; thus, article 28.10 does not apply.  
See id.
 art.
 28.10.

Because Appellant had eleven days from the date of the new indictment until the date of trial, we hold that the trial court did not err by putting Appellant to trial on August 26.  We overrule Appellant’s first point.

The law of parties

In her fourth point, Appellant contends that the trial court erred by instructing the jury on the law of parties because “there is not a provision in the law that allows a defendant to be a party to a reckless act as alleged in the indictment.”  Appellant’s contention is contrary to the court of criminal appeals’ opinion in 
Mendez v. State
, 575 S.W.2d 36, 38 (Tex. Crim App. 1979).  In that case, Mendez and two companions drove around shooting guns at cars, and one of his companions fired several shots at random houses.  
Id.
 at 37.  One of those random shots hit and killed a man sleeping in his house.  
Id.
  Mendez testified that he tried to talk the shooter out of the shooting spree and that he, himself, did not shoot at any houses.  
Id.  
After a jury convicted him of manslaughter under the law of parties, Mendez argued that one cannot be a party or accomplice to a reckless act like manslaughter.  
Id.  
The court of criminal appeals rejected that argument, stating, “It is entirely possible to intentionally solicit or assist an individual in committing a reckless act.  We hold that the law of parties does apply to the substantive offense of involuntary manslaughter.”  
Id.
 at 38.  We likewise reject Appellant’s argument that she cannot be guilty as a party to a reckless act.

To the extent that Appellant complains that there was no evidence to support the court’s charge on the law of parties, her argument is subsumed within her legal and factual sufficiency points, which we address in the next part of this opinion.  We overrule Appellant’s fourth point.

Legal and factual sufficiency

In her second and third points, Appellant argues that the evidence legally and factually insufficient to support the jury’s verdict.  We disagree.

Standards of review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Analysis

The first paragraph of the indictment alleged that Appellant recklessly caused Tiffany’s death by supplying or injecting Tiffany with heroin.  We agree that there is no evidence that Appellant, herself, injected Tiffany with heroin.  But there is legally and factually sufficient evidence to support the jury’s verdict under the law of parties.

A person commits the offense of manslaughter if the person recklessly causes the death of an individual.  
Tex. Penal Code Ann.
 §
 19.04(a) (Vernon 2003).  A person acts recklessly, or is reckless, with respect to the result of the person’s conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. 
 Id.
 
§
 6.03 (Vernon 2003).  The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all of the circumstances as viewed from the actor’s standpoint.  
Id.

Under the law of parties, a person is criminally responsible as a party to an offense if the offense is committed by the person’s own conduct, by the conduct of another for which the person is criminally responsible, or by both.   
Id.
 
§ 7.01(a) (Vernon 2003).  A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.  
Id.
 § 7.02(a)(2).  Each party to an offense may be charged with commission of the offense.  
Id
. § 7.01(b).

In determining whether the accused was a party, it is proper to look to events occurring before, during, and after the commission of the offense.  
Cordova v. State
, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), 
cert. denied
, 476 U.S. 1101 (1986).  While mere presence at or near the scene of a crime is not alone sufficient to prove that a person was a party to the offense, it is a circumstance tending to prove guilt, which combined with other facts, may suffice to show that the accused was a participant.
  Beardsley v. State
, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987).

According to Appellant’s own written admission, she not only stood by while Waltermire injected her teenage daughter with a dangerous street drug, but allowed Waltermire to inject Appellant, too.  Moreover, the jury could reasonably infer from Appellant’s own statement about the money she withdrew from the bank and paid to Waltermire, coupled with bank records introduced by Appellant showing that she withdrew the money shortly before she shot up with Waltermire and her daughter, that Appellant paid for the heroin.  The jury could also infer guilt from Appellant’s inconsistent written statements.  
See Guevara v. State
, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (stating that inconsistent statements are probative of wrongful conduct and circumstances of guilt); 
see also Tippitt v. State
, 41 S.W.3d 316, 326 (Tex. App.—Fort Worth 2001, no pet.) (acknowledging that inconsistencies in the appellant’s statements to police were “factors that could have been considered by the jury in determining his guilt”). 
 Considering the evidence in the light most favorable to the verdict, we hold that a rational juror could conclude beyond a reasonable doubt that Appellant participated in the crime by buying the heroin or overtly or tacitly encouraging Waltermire to inject her daughter.

For the sake of comparison, we examine the facts of 
Henkel v. State
, No. 08-99-00312-CR, 2001 WL 258624 (Tex. App.—El Paso March 15, 2001, pet. ref’d) (not designated for publication).  In 
Henkel
, the defendant threw a high school graduation party for her minor daughter and either served alcohol or permitted its consumption by under-age party guests.  
Id.
 at *1.  One guest—a minor whom the defendant did not know and of whose presence at the party she was unaware—became intoxicated and left the party in his pickup truck with several friends.  
Id.  
He wrecked the truck a short distance away, killing two of his passengers.  
Id.  
The defendant was indicted for intoxication manslaughter under the law of parties and convicted by a jury.  
Id.
 at *2.  The court of appeals reversed and rendered a judgment of acquittal, stating,

[i]t is impossible that [defendant] encouraged or had the intention of encouraging [the minor] to drive in his intoxicated condition when she did not know him, did not serve alcohol to him, and was not present and aware when he left by driving a truck.  However misguided or wrong [defendant’s] judgment was in allowing the party and participating in it, we will not punish her for what she did not have the intention of doing and did not do.

Id.

By contrast, the evidence in the case before us shows that Appellant was present and aware when Waltermire injected Tiffany with heroin and either actively or passively encouraged the use of heroin by allowing Waltermire to inject Appellant herself.  And as we have already noted, the jury could have inferred that Appellant paid for the heroin.  Not only was Appellant’s judgment wrong or misguided; her conduct crossed the line from passive observer to active participant in the events leading to her daughter’s death.  We hold that there was legally sufficient evidence to convict Appellant of manslaughter under the law of parties and overrule her second point.

We next consider all of the evidence in a neutral light to determine whether it is factually sufficient to support the verdict.  In addition to the evidence recounted above, testimony at trial showed that Tiffany had a long history of drug abuse, that she had attempted suicide about a month before her death, that she had been released from a mental hospital just days before her death, and that while in the mental hospital she reported that she had been raped some time before by Appellant’s boyfriend.  Drawing on this evidence, Appellant argued at trial that Tiffany committed suicide by overdosing on heroin. Dr. Krause, the medical examiner, testified that the crook of Tiffany’s right elbow had skin damage that might have resulted from an attempt at another injection, but it was unlikely that anything was injected at that site because the vein beneath it was not punctured.  It therefore appears from the evidence that the only heroin injection Tiffany received on the day she died was the one Appellant knew about and participated in.  And so—even considering all of the evidence in a neutral light—we come back to the crucial fact of this case, established by Appellant’s own admission: she not only stood by while Waltermire injected her minor daughter with a dangerous street drug, but participated by allowing him to inject Appellant, too.

We hold that the evidence is factually sufficient to support Appellant’s conviction as a party to manslaughter.  We overrule Appellant’s third point.

Because we hold the evidence to be legally and factually sufficient to support Appellant’s conviction under the first paragraph of the indictment, we need not consider her argument that the evidence was legally and factually insufficient to support her conviction under the second paragraph.  
See
 
Swearingen v. State
, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003) (“[W]hen the trial court’s charge authorizes the jury to convict on several different theories, as it did in this case, the verdict of guilty will be upheld if the evidence is sufficient on any one of the theories.”).

Conclusion

Having overruled all four of Appellant’s points, we affirm the trial court’s judgment.  
See
 
Tex. R. App. P.
 43.2(a).

ANNE GARDNER

JUSTICE

PANEL F: HOLMAN, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: March 2, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
The original indictment does not appear in the record.

3:
The new indictment (and apparently the original indictment, too ) alleged a second count, delivery of a controlled substance to a minor, but the State waived that count at trial.