COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-03-507-CR

 

 

DEBRA GATLIN CLAIR                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.                   
Introduction








            A jury convicted Appellant Debra Gatlin Clair of manslaughter
after her fifteen-year-old daughter died from a heroin injection.  In four issues, Appellant argues that the
trial court erred by putting her to trial without adequate time to prepare her
defense, that the evidence is legally and factually insufficient to support her
conviction, and that the trial court erred by charging the jury on the law of
parties.  We affirm.

II.                
Background

            Appellant
found her daughter, Tiffany, dead on the floor of Appellant=s apartment in Everman late on May 3,
2001, or early on May 4.  At trial,
Kennedale Police Officer Steven Carlson testified that he went to Appellant=s apartment in response to a 911 call at
12:37 A.M. on May 4.  Carlson realized
that Tiffany was dead as soon as he saw her, but he attempted CPR anyway.
Paramedics soon arrived and confirmed that she was dead. 








Dr. Marc Krouse, the Deputy Chief Medical Examiner
in the Tarrant County Medical Examiner=s
Office, testified that he found a single venipuncture in Tiffany=s right arm, leading him to suspect
that she had received an intravenous injection. 
A comprehensive forensic toxicology screening found morphine,
6-monoacetylmorphine (A6-MAM@), and codeineCall
byproducts of heroinCin
Tiffany=s urine
but not her blood.  Dr. Krause testified
that the presence of these chemicals in her urine but not her blood indicated
that Tiffany=s was Aa delayed death, some period of time
after [the heroin] was injected@
and that Tiffany survived for four to five hours before dying.  The toxicology screening also revealed the
presence of gabapentin (an antiseizure medication) and alprazolam (the generic
name for the prescription drug Xanax)  in
Tiffany=s
body.  Dr. Krause testified that Tiffany=s death Awas
due to ingestion or injection of drugs, including codeine, morphine, and
gabapentin . . . [with] alprazolam playing a role.@ 
Dr. Krause testified that the drugs caused Arespiratory
depression@Cin other words, they caused Tiffany to
stop breathing.  According to Dr. Krause,
the heroin would probably have killed Tiffany even without the alprazolam in
her system.  While the autopsy report
stated that the presence of 6-MAM Aindicates
morphine presence from heroine ingestion or injection,@
Dr. Krause testified that he found no evidence that Tiffany had Aingested@
heroin as opposed to injecting it.

Detective Wesley McCullough of the Everman Police
Department testified that he interviewed Appellant on May 4, 2001, at her
apartment following the discovery of Tiffany=s
body.  Appellant told him that Bradley
Waltermire, the son of Appellant=s
ex-boyfriend, had visited Tiffany at the apartment earlier in the day and left
sometime in the afternoon, that Appellant later went out to give Waltermire a
ride back to the apartment, and that Appellant and Waltermire found Tiffany
dead upon their return. 








On May 9, 2001, Appellant called Detective
McCullough and arranged to meet him at the Everman Police Department, where she
presented him with two syringes and a substance she identified as Ablack tar heroin.@ 
McCullough testified that Appellant told him that she found the heroin
after Waltermire asked her if his heroin was still in her apartment.  Appellant told McCullough that she believed
Waltermire brought the heroin to the apartment and that he and Tiffany Ashot up@
in the back bedroom.  Appellant then gave
McCullough a written statement in which she wrote that Waltermire brought two
bags of heroin to the apartment on May 3 at 12:00 or 1:00 o=clock P.M., that Tiffany told Waltermire
she wanted some of the heroin but Appellant told her Aabsolutely
not,@ and that
Tiffany and Waltermire then went into the bathroom and came out Ahigher than a kite.@ 
Tiffany lay on the couch and Awas
out about 5 [seconds] later.@  Appellant wrote that Waltermire left the
apartment Aright
after that@ at
approximately 2:00 P.M.  Between 8:00 and
8:30 P.M., Appellant wrote, Waltermire phoned Appellant and asked her to pick
him up and drive him back to the apartment. 
Appellant told Waltermire that she could not awaken Tiffany but left to
pick up Waltermire when he insisted that she do so.  When they returned, they found Tiffany dead
on the floor. 

After interviewing Waltermire, McCullough asked
Appellant to return to the police station for further questioning on May
10.  Appellant gave McCullough another
written statement.  This time, she wrote
that Waltermire injected not only himself and Tiffany with heroin on May 3, but
Appellant, too.  Her entire second statement
reads as follows:








I,
Debbie Clair state that I shot up heroin one time on the 3rd approximately
12-1:00 PM.  Brad had come over around
that time and brought a bag of heroin and 2 syringes.  He left around 2:00 or so and called me back
approximately 8-8:30 PM. and said you need to come get me cause he got caught
with Zanax in his pocket and his girlfriend kicked him out.  I left around 8-8:30 to pick him up.  We stopped at a store in Hurst and he used a
pay phone.  Someone met him there, he
left my cell phone in the guys [sic] car & we waited for about 45 mins to
an hour to get my phone back.  Brad had
bought dope from him at a convenient [sic] store.  We left there and went to the apt. and that=s when I found my baby dead.  Before I went to pick up Brad he had shot up
himself, my daughter and myself.  Brad
and I had went to the bank earlier that day & made a $200.00 withdrawal.  He accused Tiffany of stealing $50. off the
kitchen cabinet and said that was part of his rent money.  To shut him up I gave him a $100. for his
rent.

 

A grand jury indicted Appellant for manslaughter.[2]  On August 15, 2003Celeven
days before trialCshe was
reindicted.  The new indictment alleged
as follows:

Debra
Gatlin Clair . . . on or about the 3rd day of May, 2001, did then and there
recklessly, to-wit: by supplying Tiffany Clair, a person younger than 18 years
of age, with a controlled substance, namely: heroin, cause the death of an
individual, Tiffany Clair, by injecting Tiffany Clair with a controlled
substance, namely: heroin.

 








Paragraph
two: And it is further presented in and to said court that the defendant . . .
did then and there recklessly cause the death of Tiffany Clair, by failing to
seek reasonable medical care for Tiffany Clair when the defendant had knowledge
that Tiffany Clair had ingested a dangerous substance, namely: heroin, at a
time that the defendant had a legal duty to act because the defendant was the
parent of Tiffany Clair, a child younger than 17 years of age.[3]


 

Appellant pleaded Anot
guilty.@  Her case was tried to a jury.  The court=s
charge included an instruction on the law of parties.  The jury found Appellant guilty of
manslaughter and assessed her punishment at fifteen years= confinement.  The trial court entered judgment accordingly.  This appeal followed.

III.              
Discussion

            a)         Time between indictment and trial

            In her first point, Appellant argues that the trial court
erred by putting her to trial on the new indictment Awithout
time to prepare@ as
required by articles 27.11 and 28.10 of the code of criminal procedure.  See Tex.
Code Crim. Proc. Ann. arts. 27.11, 28.10 (Vernon
1989).  We disagree.








Article 27.11 provides that a
defendant shall be allowed ten days after indictment to file written pleadings.
 Id. art. 27.11.  In cases where the defendant is entitled to
service of an indictment, the ten days run from the time of service.  Id. art. 27.12.  If the defendant is on bail when the
indictment is presented, service is not required, but the clerk on request
shall Adeliver@ a copy of
the indictment to the defendant or counsel at the earliest possible time.  Id. 
art. 25.03.  If the State amends
an indictment, the defendant is entitled upon request to ten days to respond to
the amended indictment.  Id. art.
28.10(a).

The date of the original
indictment does not appear in the record. 
Appellant=s trial was
specially set for August 26, 2003, a date selected by her trial counsel.  On August 15, 2003, the grand jury reindicted
Appellant under a different indictment number. 
That same day, one of the trial prosecutors delivered a copy of the new
indictment to the office of Appellant=s trial counsel. According to counsel=s argument to the trial court, he was on vacation that day; the
indictment was delivered to his associate attorney, who was also on vacation
but happened to be at the office when the indictment was delivered. 

When the trial court called
the case to trial on August 26, the State dismissed the first indictment.  Appellant=s trial counsel announced Anot ready@ for trial
on the new indictment, objected that he was not afforded adequate time to
prepare a defense to the new indictment, and made an oral motion for
continuance.  The trial court overruled
his objection and motion, and the case proceeded to trial. 








On appeal, Appellant argues
that the trial court Acircumvented
the spirit of the law regarding the time to prepare for trial@ after the indictment was Aamended.@  By appealing to the Aspirit@ of the law,
Appellant tacitly admits, as she must, that the eleven days between the date of
the new indictment and the date of trial satisfy the ten-day requirement of the
letter of the law set out in article 27.11.  See id. art. 27.11.  Service
of the new indictment was not required because Appellant was free on bail.  See id. art. 25.03.  Thus, the ten days began to run from the date
the grand jury handed down the new indictment, August 15.  See id. art. 27.12.  Although Appellant calls the August 15
indictment an Aamendment,@ it was in fact a new indictment with a different number; thus,
article 28.10 does not apply.  See id.
art. 28.10.

Because Appellant had eleven
days from the date of the new indictment until the date of trial, we hold that
the trial court did not err by putting Appellant to trial on August 26.  We overrule Appellant=s first point.

A.                
The law of
parties








            In her fourth point, Appellant contends that the trial
court erred by instructing the jury on the law of parties because Athere is not a provision in the law
that allows a defendant to be a party to a reckless act as alleged in the
indictment.@  Appellant=s
contention is contrary to the court of criminal appeals=
opinion in Mendez v. State, 575 S.W.2d 36, 38 (Tex. Crim App.
1979).  In that case, Mendez and two
companions drove around shooting guns at cars, and one of his companions fired
several shots at random houses.  Id.
at 37.  One of those random shots hit and
killed a man sleeping in his house.  Id.  Mendez testified that he tried to talk the
shooter out of the shooting spree and that he, himself, did not shoot at any
houses.  Id.  After a jury convicted him of
manslaughter under the law of parties, Mendez argued that one cannot be a party
or accomplice to a reckless act like manslaughter.  Id. 
The court of criminal appeals rejected that argument, stating, AIt is entirely possible to
intentionally solicit or assist an individual in committing a reckless
act.  We hold that the law of parties
does apply to the substantive offense of involuntary manslaughter.@ 
Id. at 38.  We likewise
reject Appellant=s
argument that she cannot be guilty as a party to a reckless act.

To the extent that Appellant complains that there
was no evidence to support the court=s
charge on the law of parties, her argument is subsumed within her legal and
factual sufficiency points, which we address in the next part of this
opinion.  We overrule Appellant=s fourth point.

B.                
Legal and
factual sufficiency

            In her second and third points, Appellant argues that the
evidence legally and factually insufficient to support the jury=s verdict.  We disagree.

1.                 
Standards of
review








            In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id. at 484.  There are two
ways evidence may be factually insufficient: 
(1) when the evidence supporting the verdict or judgment, considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) when there is evidence both supporting and contradicting the verdict or
judgment and, weighing all of the evidence, the contrary evidence is so strong
that guilt cannot be proven beyond a reasonable doubt.  Id. at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id.








In performing a factual
sufficiency review, we are to give deference to the fact finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the
fact finder=s.  Zuniga, 144 S.W.3d at 482.  

A proper factual sufficiency
review requires an examination of all the evidence.  Id. at 484, 486-87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint
on appeal.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

2.                 
Analysis

        The first paragraph of the indictment alleged that Appellant
recklessly caused Tiffany=s death by
supplying or injecting Tiffany with heroin. 
We agree that there is no evidence that Appellant, herself, injected
Tiffany with heroin.  But there is
legally and factually sufficient evidence to support the jury=s verdict under the law of parties.








A person commits the offense
of manslaughter if the person recklessly causes the death of an
individual.  Tex. Penal Code Ann. ' 19.04(a) (Vernon 2003).  A
person acts recklessly, or is reckless, with respect to the result of the
person=s conduct when the person is aware of but consciously disregards a
substantial and unjustifiable risk that the result will occur.  Id. ' 6.03 (Vernon 2003).  The risk
must be of such a nature and degree that its disregard constitutes a gross
deviation from the standard of care that an ordinary person would exercise
under all of the circumstances as viewed from the actor=s standpoint.  Id.

Under the law of parties, a
person is criminally responsible as a party to an offense if the offense is
committed by the person=s own
conduct, by the conduct of another for which the person is criminally
responsible, or by both.   Id. ' 7.01(a) (Vernon 2003).  A
person is criminally responsible for an offense committed by the conduct of
another if, acting with intent to promote or assist the commission of the
offense, he solicits, encourages, directs, aids, or attempts to aid the other
person to commit the offense.  Id.
' 7.02(a)(2).  Each party to an
offense may be charged with commission of the offense.  Id. ' 7.01(b).








In determining whether the
accused was a party, it is proper to look to events occurring before, during,
and after the commission of the offense. 
Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), cert.
denied, 476 U.S. 1101 (1986).  While
mere presence at or near the scene of a crime is not alone sufficient to prove
that a person was a party to the offense, it is a circumstance tending to prove
guilt, which combined with other facts, may suffice to show that the accused
was a participant.  Beardsley v. State,
738 S.W.2d 681, 685 (Tex. Crim. App. 1987).

According to Appellant=s own written admission, she not only stood by while Waltermire
injected her teenage daughter with a dangerous street drug, but allowed
Waltermire to inject Appellant, too. 
Moreover, the jury could reasonably infer from Appellant=s own statement about the money she withdrew from the bank and paid to
Waltermire, coupled with bank records introduced by Appellant showing that she
withdrew the money shortly before she shot up with Waltermire and her daughter,
that Appellant paid for the heroin.  The
jury could also infer guilt from Appellant=s inconsistent written statements. 
See Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004)
(stating that inconsistent statements are probative of wrongful conduct and
circumstances of guilt); see also Tippitt v. State, 41 S.W.3d 316, 326
(Tex. App.CFort Worth
2001, no pet.) (acknowledging that inconsistencies in the appellant=s statements to police were Afactors that could have been considered by the jury in determining his
guilt@).  Considering the evidence in
the light most favorable to the verdict, we hold that a rational juror could
conclude beyond a reasonable doubt that Appellant participated in the crime by
buying the heroin or overtly or tacitly encouraging Waltermire to inject her
daughter.








For the sake of comparison,
we examine the facts of Henkel v. State, No. 08-99-00312-CR, 2001 WL
258624 (Tex. App.CEl Paso
March 15, 2001, pet. ref=d) (not
designated for publication).  In Henkel,
the defendant threw a high school graduation party for her minor daughter and
either served alcohol or permitted its consumption by under-age party
guests.  Id. at *1.  One guestCa minor whom the defendant did not know and of whose presence at the
party she was unawareCbecame
intoxicated and left the party in his pickup truck with several friends.  Id. 
He wrecked the truck a short distance away, killing two of his
passengers.  Id.  The defendant was indicted for
intoxication manslaughter under the law of parties and convicted by a
jury.  Id. at *2.  The court of appeals reversed and rendered a
judgment of acquittal, stating,

[i]t
is impossible that [defendant] encouraged or had the intention of encouraging
[the minor] to drive in his intoxicated condition when she did not know him,
did not serve alcohol to him, and was not present and aware when he left by
driving a truck.  However misguided or
wrong [defendant=s]
judgment was in allowing the party and participating in it, we will not punish
her for what she did not have the intention of doing and did not do.

 

Id.








By contrast, the evidence in
the case before us shows that Appellant was present and aware when Waltermire
injected Tiffany with heroin and either actively or passively encouraged the
use of heroin by allowing Waltermire to inject Appellant herself.  And as we have already noted, the jury could
have inferred that Appellant paid for the heroin.  Not only was Appellant=s judgment wrong or misguided; her conduct crossed the line from
passive observer to active participant in the events leading to her daughter=s death.  We hold that there was
legally sufficient evidence to convict Appellant of manslaughter under the law
of parties and overrule her second point.








We next consider all of the
evidence in a neutral light to determine whether it is factually sufficient to
support the verdict.  In addition to the
evidence recounted above, testimony at trial showed that Tiffany had a long
history of drug abuse, that she had attempted suicide about a month before her
death, that she had been released from a mental hospital just days before her
death, and that while in the mental hospital she reported that she had been
raped some time before by Appellant=s boyfriend.  Drawing on this
evidence, Appellant argued at trial that Tiffany committed suicide by
overdosing on heroin. Dr. Krause, the medical examiner, testified that the
crook of Tiffany=s right
elbow had skin damage that might have resulted from an attempt at another
injection, but it was unlikely that anything was injected at that site because
the vein beneath it was not punctured. 
It therefore appears from the evidence that the only heroin injection
Tiffany received on the day she died was the one Appellant knew about and
participated in.  And soCeven considering all of the evidence in a neutral lightCwe come back to the crucial fact of this case, established by
Appellant=s own
admission: she not only stood by while Waltermire injected her minor daughter
with a dangerous street drug, but participated by allowing him to inject
Appellant, too.

We hold that the evidence is
factually sufficient to support Appellant=s conviction as a party to manslaughter.  We overrule Appellant=s third point.

Because we hold the evidence
to be legally and factually sufficient to support Appellant=s conviction under the first paragraph of the indictment, we need not
consider her argument that the evidence was legally and factually insufficient
to support her conviction under the second paragraph.  See Swearingen v. State, 101
S.W.3d 89, 95 (Tex. Crim. App. 2003) (A[W]hen the trial court=s charge authorizes the jury to convict on several different theories,
as it did in this case, the verdict of guilty will be upheld if the evidence is
sufficient on any one of the theories.@).

IV.             
Conclusion

            Having
overruled all four of Appellant=s
points, we affirm the trial court=s
judgment.  See Tex. R. App. P. 43.2(a).

 

 

ANNE GARDNER

JUSTICE

 

PANEL F:    HOLMAN, GARDNER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
March 2, 2006











[1]See Tex. R. App. P. 47.4.





[2]The
original indictment does not appear in the record.





[3]The
new indictment (and apparently the original indictment, too ) alleged a second
count, delivery of a controlled substance to a minor, but the State waived that
count at trial.