NUMBER 13-07-0098-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


OTHA LEE JONES, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 
 

On appeal from the 176th District Court 

of Harris County, Texas

 


MEMORANDUM OPINION


Before Justices Yañez, Rodriguez and Vela


Memorandum Opinion by Justice Vela



 A jury convicted Otha Lee Jones of aggravated assault and assessed punishment
at twelve years in prison. By two issues, Jones challenges the legal and factual sufficiency
of the evidence to support the conviction. We affirm.


A. Background

 On January 6, 2006, Thomas Alaniz and his girlfriend, Constance Slaughter, were
in Alaniz's Bowie Street apartment in Houston when Alaniz heard a knock on his door. 
When he asked who was there, no one answered. Again, he heard someone knock on the
door, and when he opened it, he saw Jones, who began cursing at him and demanding to
know the whereabouts of Alaniz's ex-girlfriend, Penny Williamson, who had previously lived
in the apartment. When Alaniz told him that Williamson was not at the apartment, he
replied in a loud voice that Alaniz was lying and "disrespecting" him. 

 Alaniz let Jones come into the apartment to see for himself that Williamson was not
there. When Jones entered the apartment, a second man, Kurt Villareal, who was carrying
a shotgun, followed him inside. Villareal pointed the shotgun at Alaniz's face and told him
not to move or he would kill him. Villareal and Jones ordered Alaniz and Slaughter into the
kitchen, and Villareal stated, "why don't we just kill'em and get it over with." Jones
demanded to know where Williamson was and asked where his rings were. Alaniz denied
knowing Williamson's whereabouts and told Jones and Villareal that if they left, he would
not call the police. Jones responded that he knew Alaniz would not call the police because
Jones knew where Alaniz's wife lived and where his son worked. Jones then hit Alaniz in
the face with a closed fist. Jones and Villareal, who was still pointing the shotgun at Alaniz,
then told Alaniz to go into the bathroom. They ordered Alaniz to face the shower and not
move. After a short time, Alaniz retrieved his pistol from his nightstand and entered the
kitchen, where he saw Jones "wrapped around" Slaughter, trying to kiss her. Alaniz
pointed his pistol at Jones and told him to leave.

 Jones left the apartment and headed to a car in the parking lot. Alaniz followed him
to the car and saw Villareal getting into the vehicle. As Alaniz approached the vehicle,
Villareal began firing the shotgun at him, and Alaniz returned fire. Jones and Villareal sped
away and hit a pole. Alaniz ran toward the car and shot at it three times. Alaniz opened
the driver's side door, and Villareal fired the shotgun at Alaniz, injuring him in the arm. 
Alaniz ran back to the apartment, yelling at Slaughter to get into his truck. Alaniz and
Slaughter drove away and flagged down a police unit. Later, Alaniz positively identified
both Jones and Villareal out of a lineup.

 Issac Villareal, who managed the apartment complex where the incident occurred,
was outside his own apartment during the incident. He saw two men in a purple Honda
pull into the parking lot. The passenger, Jones, got out and approached Alaniz's
apartment while the driver, Kurt Villareal, stayed behind. Issac saw Jones and Villareal
return to the Honda and take, from the trunk, what looked like a shotgun covered with a
jacket. The two men went to Alaniz's apartment with the shotgun and after a short time,
Jones and Villareal hurriedly returned to the Honda. Alaniz ran to the Honda, pointing a
pistol and trying to open the driver's side door. Alaniz shot at the car. The driver of the car
tried to drive away, but he hit a pole. Alaniz again approached the car, and more shots
were fired. Issac testified that shots from the pistol and the shotgun went off
simultaneously. He then saw Alaniz running back toward the apartment, and Alaniz and
Slaughter "sped off" in a truck. Jones then got out of the car, but Villareal stayed inside. 
Jones walked toward the apartment complex, approaching an unidentified man, and the
man and Jones walked back to the car, got in, and drove away. 

 Andrea Rodriguez, a Houston police officer, testified she and another officer were
on patrol when they were flagged down by Alaniz and Slaughter. Officer Rodriguez stated
that Alaniz had blood on his forearm and his face. She said he was "very panicky" and
"distraught." Slaughter was crying and was "very frightened, very distraught." Both officers
helped Alaniz receive treatment for his injury. Later, the officers went to the crime scene,
where they found two beer bottles, four shells from Alaniz's gun, a shotgun, and a spent
shotgun shell. Officer Rodriguez learned that a man was being treated at Southeast
Memorial Hospital for gun-shot wounds. Officer E.L. Chew was dispatched to the hospital
to investigate.

 Officer Chew testified that upon arriving at the hospital, she was directed to a
vehicle which had been parked by a shooting victim. The vehicle matched the description
she had received, and it had four bullet holes on the driver's side. She then was directed
to the victim's room, where she identified Kurt Villareal, who had gun-shot wounds to his
shoulder and abdomen.

B. Discussion 


 By two issues, Jones argues the evidence is legally and factually insufficient to
support the verdict.

1. Legal Sufficiency


 In reviewing the legal sufficiency of the evidence to support a conviction, we view
all the evidence in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Hampton v. State, 165
S.W.3d 691, 693 (Tex. Crim. App. 2005). This standard gives full play to the responsibility
of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts. Jackson, 443 U.S. at 319. The
trier of fact is the sole judge of the weight and credibility of the evidence. See Tex. Code
Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex.
Crim. App. 2000). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of
the fact-finder. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must
resolve any inconsistencies in the evidence in favor of the judgment. Curry v. State, 30
S.W.3d 394, 406 (Tex. Crim. App. 2000). 

2. Factual Sufficiency


 When reviewing the factual sufficiency of the evidence, we view all the evidence in
a neutral light, favoring neither party. Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We will set the
verdict aside only if: (1) the evidence supporting the conviction, although legally sufficient,
is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly
unjust; or (2) the verdict is against the great weight and preponderance of the evidence. 
Watson, 204 S.W.3d at 414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). We cannot conclude a conviction is "clearly wrong" or "manifestly unjust" simply
because we would have voted to acquit. Watson, 204 S.W.3d at 417. In other words, we
may not simply substitute our judgment for the fact-finder's judgment. Johnson, 23 S.W.3d
at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

 To reverse for factual sufficiency, we must determine, with some objective basis in
the record, that the great weight and preponderance of the evidence contradicts the
verdict. Watson, 204 S.W.3d at 417. In examining a factual sufficiency challenge, we
defer to the fact-finder's determination of the credibility of the evidence. Swearingen v.
State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).

3. Argument and Analysis

 A person commits the offense of aggravated assault when "the person commits
assault as defined in section 22.01," and the person "causes serious bodily injury" or "uses
or exhibits a deadly weapon during the commission of the assault." See Tex. Penal Code
Ann. § 22.02 (Vernon Supp. 2007). A deadly weapon is defined as (1) "a firearm or
anything manifestly designed, made or adapted for the purpose of inflicting death or
serious bodily injury" or (2) "anything that in the manner of its use is capable of causing
death or serious bodily injury." See id. § 1.07(a)(15) (Vernon Supp. 2007). A shotgun is
per se a deadly weapon. See Ex parte Franklin, 757 S.W.2d 778, 783 (Tex. Crim. App.
1988).

 A person commits an assault, as defined in section 22.01, if the person (1)
"intentionally, knowingly, or recklessly causes bodily injury to another," or (2) "intentionally
or knowingly threatens another with imminent bodily injury," or (3) "intentionally or
knowingly causes physical contact with another when the person knows or should
reasonably believe that the other will regard the contact as offensive or provocative." See
Tex. Penal Code Ann. § 22.01(a) (Vernon Supp. 2007). Assault by threat does not require
that the victim perceive a threat at the time the offense occurred; instead, the statute only
requires the defendant to communicate a threat of imminent bodily injury. See Olivas v.
State, 203 S.W.3d 341, 342 (Tex. Crim. App. 2006).

 A person is criminally responsible as a party to an offense if the offense is
committed by his own conduct, by the conduct of another for which he is criminally
responsible, or by both. Tex. Penal Code Ann. §§ 7.01(a), 7.01(a)(2) (Vernon 2003);
Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). A person is criminally
responsible for an offense committed by the conduct of another if, acting with the intent to
promote or assist the commission of the offense, he solicits, encourages, directs, aids, or
attempts to aid the other person to commit the offense. Tex. Penal Code Ann. § 7.02(a)(2)
(Vernon 2003); Vodochodsky, 158 S.W.3d at 509.

 Evidence is sufficient to convict a defendant under the law of parties when he or she
is physically present at the commission of the offense and encourages the commission of
the offense either by words or by other agreement. Salinas v. State, 163 S.W.2d 734, 739
(Tex. Crim. App. 2005) (citing Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App.
1994)). While the presence of an accused at the scene of an offense is not alone sufficient
to support a conviction, it is a circumstance tending to prove guilt, which, combined with
other facts, may suffice to show that the accused was a participant. Beardsley v. State,
738 S.W.2d 681, 685 (Tex. Crim. App. 1987). Further, participation in an enterprise may
be inferred from circumstances and need not be shown by direct evidence. Id. at 684.

 Here, the evidence showed that Jones, along with Villareal, threatened to kill Alaniz
while pointing a shotgun at his face. Jones hit Alaniz in the face with his fist, and
threatened Alaniz by indicating that he knew where his wife lived and where his son
worked. Jones participated with Villareal as they ordered Alaniz into the bathroom, still
pointing the shotgun at him. Finally, the evidence showed that Jones was in the car with
Villareal when Villareal fired the shotgun at Alaniz, injuring him in the arm.

 When viewing the evidence under the appropriate legal standards, we conclude that
the evidence was both legally and factually sufficient to support the jury's verdict. 
Accordingly, we overrule the issues and affirm the trial court's judgment. 

 

 ROSE VELA

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 10th day of April, 2008.