

# NUMBER 13-07-0098-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **OTHA LEE JONES,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 176th District Court
### of Harris County, Texas

# MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez and Vela
### Memorandum Opinion by Justice Vela

A jury convicted Otha Lee Jones of aggravated assault and assessed punishment at twelve years in prison. By two issues, Jones challenges the legal and factual sufficiency of the evidence to support the conviction. We affirm.

## A. Background

On January 6, 2006, Thomas Alaniz and his girlfriend, Constance Slaughter, were in Alaniz's Bowie Street apartment in Houston when Alaniz heard a knock on his door. When he asked who was there, no one answered. Again, he heard someone knock on the door, and when he opened it, he saw Jones, who began cursing at him and demanding to know the whereabouts of Alaniz's ex-girlfriend, Penny Williamson, who had previously lived in the apartment. When Alaniz told him that Williamson was not at the apartment, he replied in a loud voice that Alaniz was lying and "disrespecting" him.

Alaniz let Jones come into the apartment to see for himself that Williamson was not there. When Jones entered the apartment, a second man, Kurt Villareal, who was carrying a shotgun, followed him inside. Villareal pointed the shotgun at Alaniz's face and told him not to move or he would kill him. Villareal and Jones ordered Alaniz and Slaughter into the kitchen, and Villareal stated, "why don't we just kill'em and get it over with." Jones demanded to know where Williamson was and asked where his rings were. Alaniz denied knowing Williamson's whereabouts and told Jones and Villareal that if they left, he would not call the police. Jones responded that he knew Alaniz would not call the police because Jones knew where Alaniz's wife lived and where his son worked. Jones then hit Alaniz in the face with a closed fist. Jones and Villareal, who was still pointing the shotgun at Alaniz, then told Alaniz to go into the bathroom. They ordered Alaniz to face the shower and not move. After a short time, Alaniz retrieved his pistol from his nightstand and entered the kitchen, where he saw Jones "wrapped around" Slaughter, trying to kiss her. Alaniz pointed his pistol at Jones and told him to leave.

2

Jones left the apartment and headed to a car in the parking lot. Alaniz followed him to the car and saw Villareal getting into the vehicle. As Alaniz approached the vehicle, Villareal began firing the shotgun at him, and Alaniz returned fire. Jones and Villareal sped away and hit a pole. Alaniz ran toward the car and shot at it three times. Alaniz opened the driver's side door, and Villareal fired the shotgun at Alaniz, injuring him in the arm. Alaniz ran back to the apartment, yelling at Slaughter to get into his truck. Alaniz and Slaughter drove away and flagged down a police unit. Later, Alaniz positively identified both Jones and Villareal out of a lineup.

Issac Villareal, who managed the apartment complex where the incident occurred, was outside his own apartment during the incident. He saw two men in a purple Honda pull into the parking lot. The passenger, Jones, got out and approached Alaniz's apartment while the driver, Kurt Villareal, stayed behind. Issac saw Jones and Villareal return to the Honda and take, from the trunk, what looked like a shotgun covered with a jacket. The two men went to Alaniz's apartment with the shotgun and after a short time, Jones and Villareal hurriedly returned to the Honda. Alaniz ran to the Honda, pointing a pistol and trying to open the driver's side door. Alaniz shot at the car. The driver of the car tried to drive away, but he hit a pole. Alaniz again approached the car, and more shots were fired. Issac testified that shots from the pistol and the shotgun went off simultaneously. He then saw Alaniz running back toward the apartment, and Alaniz and Slaughter "sped off" in a truck. Jones then got out of the car, but Villareal stayed inside. Jones walked toward the apartment complex, approaching an unidentified man, and the man and Jones walked back to the car, got in, and drove away.

3

Andrea Rodriguez, a Houston police officer, testified she and another officer were on patrol when they were flagged down by Alaniz and Slaughter. Officer Rodriguez stated that Alaniz had blood on his forearm and his face. She said he was "very panicky" and "distraught." Slaughter was crying and was "very frightened, very distraught." Both officers helped Alaniz receive treatment for his injury. Later, the officers went to the crime scene, where they found two beer bottles, four shells from Alaniz's gun, a shotgun, and a spent shotgun shell. Officer Rodriguez learned that a man was being treated at Southeast Memorial Hospital for gun-shot wounds. Officer E.L. Chew was dispatched to the hospital to investigate.

Officer Chew testified that upon arriving at the hospital, she was directed to a vehicle which had been parked by a shooting victim. The vehicle matched the description she had received, and it had four bullet holes on the driver's side. She then was directed to the victim's room, where she identified Kurt Villareal, who had gun-shot wounds to his shoulder and abdomen.

## B. Discussion

By two issues, Jones argues the evidence is legally and factually insufficient to support the verdict.

### 1. Legal Sufficiency

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hampton v. State*, 165

4

S.W.3d 691, 693 (Tex. Crim. App. 2005). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any inconsistencies in the evidence in favor of the judgment. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

### 2. Factual Sufficiency

When reviewing the factual sufficiency of the evidence, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We will set the verdict aside only if: (1) the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust; or (2) the verdict is against the great weight and preponderance of the evidence. *Watson*, 204 S.W.3d at 414-15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We cannot conclude a conviction is "clearly wrong" or "manifestly unjust" simply because we would have voted to acquit. *Watson*, 204 S.W.3d at 417. In other words, we may not simply substitute our judgment for the fact-finder's judgment. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

To reverse for factual sufficiency, we must determine, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict. *Watson*, 204 S.W.3d at 417. In examining a factual sufficiency challenge, we defer to the fact-finder's determination of the credibility of the evidence. *Swearingen v. State*, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).

## 3. Argument and Analysis

A person commits the offense of aggravated assault when "the person commits assault as defined in section 22.01," and the person "causes serious bodily injury" or "uses or exhibits a deadly weapon during the commission of the assault." *See* TEX. PENAL CODE ANN. § 22.02 (Vernon Supp. 2007). A deadly weapon is defined as (1) "a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury" or (2) "anything that in the manner of its use is capable of causing death or serious bodily injury." *See id.* § 1.07(a)(15) (Vernon Supp. 2007). A shotgun is per se a deadly weapon. *See Ex parte Franklin*, 757 S.W.2d 778, 783 (Tex. Crim. App. 1988).

A person commits an assault, as defined in section 22.01, if the person (1) "intentionally, knowingly, or recklessly causes bodily injury to another," or (2) "intentionally or knowingly threatens another with imminent bodily injury," or (3) "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." *See* TEX. PENAL CODE ANN. § 22.01(a) (Vernon Supp. 2007). Assault by threat does not require that the victim perceive a threat at the time the offense occurred; instead, the statute only

requires the defendant to communicate a threat of imminent bodily injury. *See Olivas v. State*, 203 S.W.3d 341, 342 (Tex. Crim. App. 2006).

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX. PENAL CODE ANN. §§ 7.01(a), 7.01(a)(2) (Vernon 2003); *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). A person is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 2003); *Vodochodsky*, 158 S.W.3d at 509.

Evidence is sufficient to convict a defendant under the law of parties when he or she is physically present at the commission of the offense and encourages the commission of the offense either by words or by other agreement. *Salinas v. State*, 163 S.W.2d 734, 739 (Tex. Crim. App. 2005) (citing *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)). While the presence of an accused at the scene of an offense is not alone sufficient to support a conviction, it is a circumstance tending to prove guilt, which, combined with other facts, may suffice to show that the accused was a participant. *Beardsley v. State*, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987). Further, participation in an enterprise may be inferred from circumstances and need not be shown by direct evidence. *Id*. at 684.

Here, the evidence showed that Jones, along with Villareal, threatened to kill Alaniz while pointing a shotgun at his face. Jones hit Alaniz in the face with his fist, and threatened Alaniz by indicating that he knew where his wife lived and where his son worked. Jones participated with Villareal as they ordered Alaniz into the bathroom, still

7

pointing the shotgun at him. Finally, the evidence showed that Jones was in the car with Villareal when Villareal fired the shotgun at Alaniz, injuring him in the arm.

When viewing the evidence under the appropriate legal standards, we conclude that the evidence was both legally and factually sufficient to support the jury's verdict. Accordingly, we overrule the issues and affirm the trial court's judgment.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 10th day of April, 2008.