**Affirmed as Modified; Opinion Filed October 28, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-01119-CR**

**No. 05-12-01120-CR**

**ROBERT DESHON THOMAS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F09-61035-V and F09-61036-V**

## OPINION

Before Justices FitzGerald, Francis, and Myers
Opinion by Justice Myers

Appellant was convicted of possession with the intent to deliver the controlled substances

of cocaine[1] and phencyclidine (PCP),[2] in amounts over four grams or more but less than 200

grams, and was sentenced to concurrent terms of forty years in prison for each offense. In four

issues, he argues the evidence is insufficient to support the convictions and that the trial court's

orders for appellant to pay $290 in court costs in 05–12–01119–CR, and $310 in cause 05–12–

01120–CR, are likewise not supported by sufficient evidence. We affirm the trial court's

judgments.

---

[1] Cause number 05–12–01119-CR. Trial court cause number F09-61035-V.

[2] Cause number 05–12–01120-CR. Trial court cause number F09-61036-V.

## DISCUSSION

### *Sufficiency of the Evidence*

In his first and second issues, appellant argues the evidence is insufficient to support the convictions for possession with the intent to deliver cocaine (issue one) and PCP (issue two).

In reviewing a challenge to the sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894–95 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). We must defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326.

Appellant was charged with possessing with the intent to deliver cocaine and PCP. In order to convict appellant of these offenses, the State was required to prove beyond a reasonable doubt he exercised actual care, custody, control, or management over the contraband and knew the material possessed was contraband. *See Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011). The State may prove this by linking appellant to the crime. *See id.* These links may include, but are not limited to, (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether

–2–

the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). Links between appellant and the drugs may be established by either direct or circumstantial evidence. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). No set formula of facts exists to dictate a finding of links sufficient to support an inference of knowing possession. *See Taylor v. State*, 106 S.W.3d 827, 830 (Tex. App.—Dallas 2003, no pet.). It is the logical force of the evidence, and not the number of links, that supports a fact finder's verdict. *See Evans*, 202 S.W.3d 158 at 166.

The jury was also instructed on the law of parties:

> All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.[3]

> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.[4] Mere presence alone will not constitute one a party to an offense.

In determining whether one has acted as a party in the commission of a criminal offense, "the court may look to events before, during and after the commission of the offense." *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987). "Participation in an enterprise may be inferred from the circumstances and need not be shown by direct evidence." *Id*. The mere presence of the defendant at the scene is not sufficient to support a conviction; however, it may suffice to show defendant was a participant when combined with other facts. *See id*. at 685.

---

[3] *See* TEX. PENAL CODE ANN. § 7.01(a).

[4] *Id*. § 7.02(a)(2).

According to the record, the Dallas Police received an anonymous tip in October of 2009 that drugs were being sold from a house located at 2554 Stovall Drive in Dallas County, Texas. Following a series of "controlled buys" of narcotics at that location by a confidential informant, a search warrant was obtained. The search warrant affidavit described an individual identified as "suspect #1" from whom the informant had purchased drugs, and referred to "other persons whose names, ages, and identities are unknown to the affiant." Dallas narcotics detective James Lewis, who led the investigation, testified that appellant did not match the descriptions of any individuals listed in the search warrant affidavit, but appellant's co-defendant, Tynava McHenry, did match the description of one of the individuals listed in the affidavit. The search warrant was executed at 5:45 p.m. on November 5, 2009.

Lewis testified that the Stovall house had bars bolted on the windows and doors, and inside the sparsely furnished house was an attached-to-a-monitor surveillance camera aimed at the front porch. A "Jamaican block"—a wooden board wedged between boards on the floor and the door to prevent the entrance of police and potential robbers—secured the back door of the house. There were dogs kept in the house: the floor of one of the bedrooms was covered with newspapers that were soaked with urine and animal feces, and the air was thick with the smell of ammonia. The windows of the house were covered with curtains in such a way as to conceal the activity inside the house. Mario Castanon, a Dallas Police Department narcotics officer, testified that, given the amount of drugs found and other aspects of the house, including the "Jamaican block," the Stovall house was a "classic neighborhood drug house."

As the police officers drove up to the Stovall house on November 5, 2009, one of the officers said, "There's two walking out the front door now." Lewis turned around and saw appellant and McHenry walking from the house's front porch through the yard. Officers made

the two get down on the ground and Officer Dennis Malone placed both appellant and McHenry in custody. A "wad" of cash totaling approximately $300 was found in appellant's pocket.

After they entered the house and determined no one was present, police officers found a number of items that they photographed and confiscated. The officers saw a large block of crack cocaine, and a loaded 9 millimeter semi-automatic pistol (with twelve rounds in the magazine), in plain view on a small coffee table in the living room. Another 9 millimeter semi-automatic pistol (with six rounds in the magazine) was found on the couch. Officers found a Texas identification card for McHenry underneath the gun on the coffee table. Other items seized by the officers included two cell phones, prescription drugs, some green tinted "baggies" containing marijuana, vials of PCP, some scales, a number of small "cigarillos," and $1,080 in cash.[5] Lewis testified that the denominations of money found at the house were consistent, based on his training and experience, "with street denominations used in drug sales." Police were able to link one of the cell phones to McHenry; neither cell phone was linked to appellant. Lewis also testified that the "cigarillos" found in the house, which could be "dipped and smoked," were often found in locations that sold PCP. No property belonging to appellant was found near the firearms.

In the house's breakfast nook, officers found a $47 bill for auto insurance delivered to the Stovall house address—with the effective dates of April 10, 2009 to December 12, 2009. The insurance bill, which was the only piece of mail seized from the house, was addressed to appellant at the Stovall address. No mail was found in McHenry's name. On the couch in the bedroom, detectives found "[a] pair of pants with a belt on it." Inside one of the front pockets

---

[5] Lauren Woolridge, a chemist with the Southwestern Institute of Forensic Sciences, tested the cocaine and found it had an aggregate weight, including adulterants or dilutants, of 49 grams—the actual cocaine weighing 13 grams. Additionally, the phencyclidine, or PCP, had an aggregate weight, including adulterants or dilutants, of 12.2 grams, with PCP itself weighing 6.8 grams.

was a wallet with a Texas identification card in appellant's name, and the other front pocket contained a bundle of money totaling $1,092.

The evidence, therefore, shows the following links between appellant and the drugs: Appellant was located just outside the front door of the Stovall house with co-defendant McHenry when the search warrant was executed. Appellant had approximately $300 in cash on his person when he was arrested. The drugs found in the house were in plain view. Appellant received mail—an automobile insurance bill—at the address. A Texas identification card in appellant's name was found in his pants in a bedroom, together with $1,092 in cash. Furthermore, according to witness testimony, that bedroom was the only habitable location in the house. The jury could have reasonably inferred that the pants found in the bedroom belonged to appellant because his identification was the only identification found in the pants pockets, along with the $1,092 in cash.

Appellant offers several arguments in response. He argues there is no evidence showing how long the insurance bill had been at the Stovall house or when it was mailed to the house, and that there is no evidence to show the pants or the wallet actually belonged to him. Appellant cites testimony from his aunt, Angelina Hickman, and his sister, Jahanara Jones, that he left Dallas for South Carolina in September of 2009, returning on November 2, 2009, three days before his arrest. Appellant points out that the police received the anonymous complaint about drug dealing in the Stovall house in October of 2009, while, according to the two defense witnesses, he was living in South Carolina.

These arguments concern the weight and credibility of the evidence—determinations that were within the sole authority of the trier of fact. It was the jury's role, as the finder of fact, to resolve the conflicts in the evidence, and it was free to accept or reject any and all of the evidence presented by either side. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Wesbrook v.*

*State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Based on the evidence presented, we conclude a rational jury could find beyond a reasonable doubt that appellant exercised actual custody and control over the cocaine and the PCP, knowing it was contraband, or that he acted with the intent to promote or assist McHenry's commission of the offense. Accordingly, the evidence is sufficient to show appellant possessed the cocaine and the PCP either as a principal or a party. We overrule appellant's first and second issues.

### *Court Costs*

In his third and fourth issues, appellant argues the evidence is insufficient to support the trial court's orders for him to pay $290 in court costs in 05-12-01119-CR, and $310 in court costs in cause 05-12-01120-CR. He requests we reform the judgments to delete the requirements that he pay those court costs because the clerk's records do not contain a bill of costs.

The Texas Code of Criminal Procedure provides in part that if a criminal action is appealed, "an officer of the court shall certify and sign a bill of costs stating the costs that have accrued and send the bill of costs to the court to which the action or proceeding is transferred or appealed." TEX. CODE CRIM. PROC. ANN. art. 103.006. The code of criminal procedure further provides that "[a] cost is not payable by the person charged with the cost until a written bill is produced or is ready to be produced, containing the items of cost, signed by the officer who charged the cost or the officer who is entitled to receive payment for the cost." *Id.* art. 103.001.

The clerk's records in these cases did not contain copies of the cost bills or any other documents with an itemized list of costs assessed in each case. Given that appellant raised issues concerning the costs assessed against him, we ordered the Dallas County District Clerk to prepare and file supplemental clerk's records containing detailed itemizations of the costs assessed in each case, including specific court costs, fees, and court-appointed attorney's fees, and that the supplemental record should include documents explaining any and all abbreviations

–7–

used to designate a particular fee, cost, or court-appointed attorney's fee. *See* TEX. R. APP. P. 34.5(c)(1) (rules of appellate procedure allow supplementation of clerk's record if relevant item has been omitted). The District Clerk has complied with our order by filing signed and certified supplemental clerk's records containing itemizations of the costs assessed in each case, and an explanation of the abbreviations used in the itemizations. Because the records now contain cost bills that support the costs assessed in the judgments, appellant's argument that the evidence is insufficient to support the imposition of costs because the clerk's records did not contain cost bills is, therefore, moot. *See Coronel v. State*, No. 05–12–00493–CR, 2013 WL 3874446, at *4 (Tex. App.—Dallas July 29, 2013, no pet.) (citing *Franklin v. State*, 402 S.W.3d 894, 894 (Tex. App.—Dallas 2013, no pet.)); *see also Barrera v. State*, No. 05–12–00715–CR, 2013 WL 5314715, at *4 (Tex. App.—Dallas Sept. 20, 2013, no pet. h.) (mem. op., not designated for publication); *Juarez v. State*, No. 05–12–00125–CR, 2013 WL 3957008, at *9 (Tex. App.—Dallas July 31, 2013, no pet.) (not designated for publication).

In response to the supplemental clerk's records, appellant filed objections in which he argues the cost bill filed in each of the supplemental records is not a "proper bill of costs." He contends the cost bills are not proper bills of costs because they are "unsigned, unsworn computer printouts" that were not "signed by the officer who charged the cost nor by the officer who is entitled to receive payment for the cost." As we stated earlier, the code of criminal procedure requires that a bill of cost be certified and signed "by the officer who charged the costs or the officer who is entitled to receive payment for the cost," "stating the costs that have accrued" if the cause is appealed. *See* TEX. CODE CRIM. PROC. ANN. art. 103.001, .006.

In this case, the District Clerk has provided cost bills that itemize the costs that have accrued thus far in both cases, and they are certified and signed by the District Clerk. This satisfies the mandate of the code of criminal procedure. *See Coronel*, 2013 WL 3874446, at *4

–8–

(rejecting argument that bill of costs in supplemental clerk's record was not a "proper bill of costs" because it was an "unsigned, unsworn computer printout"); *see also Juarez*, 2013 WL 3957008, at *10 (same). Appellant also contends there is no indication the bills of costs were filed in the trial court or brought to the court's attention before the costs were entered in the judgments. We rejected this argument in *Coronel*, where we stated that "nothing in the code of criminal procedure or the statutes addressing the assessment of costs against defendants requires that a bill of costs be presented to the trial court at any time before judgment." *Coronel*, 2013 WL 3874446, at *5; *see also Juarez*, 2013 WL 3957008. We therefore deny appellant's objections, and overrule his third and fourth issues.[6]

### *Modification of Judgments*

The indictments in 05–12–01119–CR and 05–12–01120–CR each contain a single enhancement paragraph, which reads as follows:

> And it is further presented to said Court that prior to the commission of the offense or offenses set out above, the defendant was finally convicted of the felony offense of POSSESSION OF A CONTROLLED SUBSTANCE, in the CRIMINAL DISTRICT COURT NO. 1 of DALLAS County, Texas, in Cause Number F90-32380, on the 8th day of August, 1990.

In addition, the trial court's judgments in the above cases state, next to the part of the judgment entitled "Plea to 1st Enhancement Paragraph" and "Findings on 1st Enhancement Paragraph," "N/A." The record, however, shows that in each case appellant entered a plea of true to the enhancement paragraph and that the trial court accepted appellant's pleas of true, then later found the enhancement paragraph in each case to be true.

This Court has the power to modify incorrect judgments to make the record speak the truth when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v.*

---

[6] In his original brief and his objections, appellant does not challenge the propriety or legality of the specific costs assessed; therefore, we do not address those matters.

*State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Our authority to modify incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court. *Asberry*, 813 S.W.2d at 529–30. We thus modify, on our own motion, the judgments in 05–12–01119–CR and 05–12–01120–CR to read as follows: "Plea to 1st Enhancement Paragraph: True" and "Findings on 1st Enhancement Paragraph: True."

As modified, we affirm the trial court's judgments.

/s/ Lana Myers
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
121119F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROBERT DESHON THOMAS, Appellant      On Appeal from the 292nd Judicial District
Court, Dallas County, Texas

No. 05-12-01120-CR      V.      Trial Court Cause No. F09-61036-V.
Opinion delivered by Justice Myers.

THE STATE OF TEXAS, Appellee      Justices FitzGerald and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"Plea to 1st Enhancement Paragraph: True" and "Findings on 1st Enhancement Paragraph: True."

As **MODIFIED**, the judgment is **AFFIRMED**. We direct the trial court to enter a new judgment that reflects this modification.

Judgment entered this 28th day of October, 2013.

/Lana Myers/
LANA MYERS
JUSTICE

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROBERT DESHON THOMAS, Appellant

No. 05-12-01119-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 7, Dallas County, Texas
Trial Court Cause No. F09-61035-V.
Opinion delivered by Justice Myers.
Justices FitzGerald and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"Plea to 1st Enhancement Paragraph:  True" and "Findings on 1st Enhancement Paragraph:   True."

As **MODIFIED**, the judgment is **AFFIRMED**.   We direct the trial court to enter a new judgment that reflects this modification.

Judgment entered this 18th day of October, 2013.


/Lana Myers/
LANA MYERS
JUSTICE